**Harold L. BUSHENDORF,**
**Plaintiff–Appellee,**

v.

**FREIGHTLINER CORPORATION,**
**Defendant–Appellant.**

No. 93–2237.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1993.

Decided Dec. 30, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 3, 1994.

---

Robert A. Thorson, Chippewa Falls, WI (argued), for Harold L. Bushendorf.

Brian W. McGrath (argued), Jon P. Christiansen, Mark L. Langenfeld, Foley & Lardner, Milwaukee, WI (argued), for Freightliner Corp.

Before POSNER, Chief Judge, and LAY * and EASTERBROOK, Circuit Judges.

* Hon. Donald P. Lay of the Eighth Circuit, sitting by designation.

POSNER, Chief Judge.

The defendant in a diversity breach of warranty suit governed by Wisconsin law appeals from a judgment for some $140,000 entered after a jury verdict for the plaintiff. In April 1991, the plaintiff, Harold Bushendorf, an experienced independent long-haul truck driver and resident of Wisconsin, bought for $67,000 a large semi-tractor truck from a Wisconsin dealer, River States Truck and Trailer, Inc. The truck had been manufactured by Freightliner Corporation, a subsidiary of Daimler Benz. Bushendorf specified that the truck was to be equipped with a 425–horsepower engine manufactured by Detroit Diesel, Inc. Detroit Diesel warranted the engine, Freightliner the materials and workmanship of the vehicle itself. Freightliner's warranty calls itself a "limited warranty ... exclusive and in lieu of all other warranties whether written, oral or implied, including but not limited to any warranty of merchantability or fitness for purpose."

Shortly after taking delivery of the truck, Bushendorf complained that it had insufficient power. Tests revealed that while the engine indeed produced 425 horsepower (in fact a bit more), only 315 horsepower were delivered via the power train to the wheels of the truck. No part was found to be defective; the truck simply didn't deliver the performance that Bushendorf wanted. In November 1991 he stopped driving the truck, and in fact abandoned the independent trucking business and became an employee of a trucking company. He sued Detroit Diesel as well as Freightliner for breach of warranty. But since the engine performed as warranted, Detroit Diesel was able to get out of the case on a motion for summary judgment. Nothing in the power train was found to be defective, so Freightliner wanted out of the suit too; but Bushendorf countered with evidence that a salesman for River States named Schamer had told him that "a 425 is a 425." Bushendorf interpreted this as a promise that the power train would deliver at least 361 horsepower to the wheels, because (he testified) the industry norm is that no more than 15 percent of the power generated

by the engine should be lost en route to the wheels. River States was never joined as a defendant. But, describing the alleged promise by Schamer as an express warranty by Freightliner of the power to be delivered to the wheels, Bushendorf appealed to Wisconsin's "lemon law," which provides a remedy to the purchaser of a new motor vehicle that "does not conform to an applicable express warranty." Wis.Stat. § 218.015(2)(a). He was allowed to present this theory to the jury, and the jury bought it.

■ The district judge erred in allowing the case to go to the jury even if we indulge the dubious proposition that Schamer's statement "a 425 is a 425" is a promise concerning the horsepower at the wheels. According to Bushendorf, the context of the statement was Bushendorf's inquiring whether a Detroit Diesel engine would work well in a Freightliner semi-tractor and the statement itself meant that it would work as well as any 425 horsepower engine could be expected to work, which means delivering at least 361 horsepower to the wheels. Although skeptical, we cannot pronounce this an impossible interpretation. But even if Schamer's statement was therefore a warranty of performance, it was a warranty issued by River States, the dealer (assuming that Schamer was acting with at least apparent authority in issuing it), not by Freightliner, the manufacturer. Such a warranty might well provide a basis for a suit for breach of warranty against River States, but Bushendorf has not filed such a suit; he hasn't sued River States at all. An agent can of course bind his principal with representations made within the scope of his employment, but an automobile dealer or other similar type of dealer, who like River States merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent. *Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 47 (1st Cir.1984); *Conte v. Dwan Lincoln–Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144, 149–50 (1976); *Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App.3d 815, 586 N.E.2d 1113, 1117 (1990) (per curiam); *Hunter Mining Laboratories, Inc. v. Management Assistance, Inc.*, 104 Nev. 568, 763 P.2d 350 (1988) (per curiam); *Restatement (Second) of Agency* § 14j and comment e (1958).

■ Bushendorf responds that the Wisconsin lemon law is a "remedial" statute which should be liberally construed—so liberally as to dispense with any requirement that the "express warranty" to which the good "does not conform" be made by the manufacturer of the "lemon" or his agent. In support of this startling proposition—at argument Bushendorf's lawyer acknowledged that on his interpretation of the lemon law it would have made no difference had Schamer been a mischievous bystander who sidled up to Bushendorf and whispered in his ear that the Freightliner semi-tractor with a Detroit Diesel engine would deliver 361 horsepower to the wheels—Bushendorf can point to nothing in the text or history of the lemon law or in any of the cases interpreting the law. It will not do to intone the hoary canon that remedial statutes are to be construed liberally. That is one of the least persuasive of the canons; in *Contract Courier Services, Inc. v. Research & Special Programs Administration*, 924 F.2d 112, 115 (7th Cir.1991), we called it "useless." There is no presumption that when a legislature legislates against some abuse, such as the sale of "lemons" without proper disclosure, it means to resolve all difficult questions in favor of liability, thus disregarding every value other than that of providing remedies for injuries and every interest other than that of prospective victims. *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam); *Contract Courier Services, Inc. v. Research & Special Programs Administration, supra*, 924 F.2d at 115; *American Motors Corp. v. Dept. of Industry, Labor & Human Relations*, 101 Wis.2d 337, 305 N.W.2d 62, 68–69 (1981); *Kania v. Airborne Freight Corp.*, 99 Wis.2d 746, 300 N.W.2d 63, 75–76 (1981). Remedial statutes like other statutes are typically compromises, and a court would upset the compromise if it nudged such a statute closer to the victim side of the line than the words and history and other indications of the statute's meaning pointed. It hardly seems likely that the Wisconsin legislature would for the sake of purchasers of "lemons" throw out the whole law of agency, especially when the

purchaser can always sue the dealer, not under the lemon law which is inapplicable to dealers but under the Uniform Commercial Code, if the dealer's salesmen make representations interpretable as warranties. Barkley Clark & Christopher Smith, *The Law of Product Warranties* ¶ 7.03[5], p. S7–25 (1992 Cum.Supp.); UCC § 2–313, Wis. Stat. § 402.313.

■ An independent reason why Bushendorf must lose is that his contract with Freightliner disclaimed all oral warranties. So even if Schamer's warranty was a warranty of performance by Freightliner—which it wasn't—it was disclaimed. The lemon law contains no provision forbidding disclaimers of warranties or allowing a suit to be brought upon a disclaimed warranty. Cf. *Kennedy v. Linda Brock Automotive Plaza, Inc.*, 175 Ariz. 323, 856 P.2d 1201, 1204 (App.1993) (construing Arizona's lemon law). We suppose it conceivable that a Wisconsin court, should the issue arise as it has not in Wisconsin, might borrow for the lemon law the principle codified in section 2–316(1) of the UCC that "words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." This provision has been understood to forbid the complete negation of an express warranty. James J. White & Robert S. Summers, *Uniform Commercial Code* §§ 12–2, 12–3 (3d ed. 1988). An implied warranty is something the law reads into a contract to save the parties the trouble of having to negotiate an express term; it is an off-the-rack term. If the parties don't like it, if they would prefer to custom-make their own term, they are free to do so, free that is to disclaim the implied warranty. UCC § 2–316(3)(a). But if the parties *have* negotiated an express warranty, a clause in the same contract disclaiming it—a clause that takes with one hand what has just been given with another—suggests some deep confusion which may warrant reparative efforts by the court. All this is of little importance here, however, since the express warranty (if that is what it is) that a 425 is a 425 was an oral warranty made in precontractual negotiation and not repeated in the written contract—which contains an inte-

gration clause. So it was extinguished by operation of the parol-evidence rule. UCC § 2–202; White & Summers, *supra,* § 12–4.

■ We need not consider whether Bushendorf might have done better (he could not have done worse) by basing his suit not on Schamer's statement but on the express written warranty that Freightliner issued as part of the contract of sale. For reasons that we cannot fathom, the parties have stipulated that the warranty is limited to the materials and workmanship *of parts* supplied by Freightliner rather than of the vehicle as a whole, although no such limitation appears in the warranty itself. Even if such a limitation had appeared there, the warranty would not necessarily be so narrow as Freightliner's lawyer argues. He argues that all that is warranted by a parts warranty is each part taken by itself; if they don't work together, tough luck. We can imagine a case in which though every component of the power train was nondefective viewed in isolation, the power train as a whole did not work: delivered zero horsepower to the wheels, so that when the driver turned on the ignition, shifted into drive, released the brakes, and depressed the accelerator, the truck did not move a millimeter. It would be curious if the buyer had no remedy in such a case, if not under the lemon law then under ordinary principles of sales law. We need not pursue the issue. The warranty was of the whole product, not just of individual parts, and when the product turns out to be a lemon the buyer can recover under the express warranty of materials and workmanship even if the remedy under the warranty is limited to repair or replacement of individual parts and no parts are found to be defective. *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513, 521–23 (1978); *Chmill v. Friendly Ford–Mercury*, 144 Wis.2d 796, 424 N.W.2d 747, 751 (App.1988); *Midwhey Powder Co. v. Clayton Industries*, 157 Wis.2d 585, 460 N.W.2d 426, 430 (App.1990); Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 8.04[2][a] (1984). But Freightliner's express written warranty is not the ground on which Bushendorf seeks relief.

The judgment is reversed with directions to enter judgment for the defendant.

REVERSED.