Michele A. DUSSAULT, Plaintiff-Appellant,

v.

CHRYSLER CORPORATION, a foreign corporation, and
John Lynch Chevrolet-Pontiac Sales, Inc., a Wisconsin
corporation, Defendants-Respondents.

Court of Appeals

*No. 98–0744. Submitted on briefs February 15,
1999.—Decided July 7, 1999.*

(Also reported in 600 N.W.2d 6.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas J. Flanagan* and *Vincent P. Megna* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Shawn M. Govern* of *Petrie & Stocking, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. This case presents two novel issues under § 218.015, STATS., Wisconsin's "Lemon Law." The first is whether a manufacturer fulfills its obligation to provide a "comparable new motor vehicle" under § 218.015(2)(b) by offering to replace a consumer's nonconforming demonstrator vehicle with another demonstrator. Because we determine that the phrase "comparable new motor vehicle " is ambiguous, and because the purpose of the statute is to put a consumer in the position the consumer believed he or she was in at the time the vehicle was purchased, we conclude that the Lemon Law permits the replacement of a nonconforming demonstrator with a comparable demonstrator.

The second issue is whether a consumer may pursue an alternative remedy under § 218.015(2)(a), STATS., as recognized by *Vultaggio v. General Motors Corp.*, 145 Wis. 2d 874, 429 N.W.2d 93 (Ct. App. 1988), once the consumer has established that the manufacturer was provided a "reasonable attempt to repair" the nonconforming vehicle. We conclude that when a "reasonable attempt to repair" is demonstrated, the consumer is limited to recovery under § 218.015(2)(b).

## BACKGROUND

On July 10, 1995, Michele A. Dussault purchased a 1994 Eagle Vision from John Lynch Chevrolet-Pontiac Sales, Inc., an authorized dealer for Chrysler Corporation, located in Burlington, Wisconsin. Dussault purchased the vehicle as a demonstrator with 6302 miles. Within the first year of ownership, Dussault experienced at least one warranty nonconformity

which was not repaired despite a reasonable attempt to do so. *See* § 218.015(2)(a), (b), STATS.

In a letter dated September 9, 1997, Dussault notified Chrysler that she believed her vehicle qualified as a "lemon" under the Lemon Law due to warranty nonconformities. Dussault demanded that Chrysler accept the return of the vehicle and provide her with a "comparable new motor vehicle" and collateral costs incurred in repairing the vehicle. In October, Chrysler responded that it had a comparable "new demo" available for Dussault. The vehicle was a 1997 Eagle Vision with 5728 miles. Dussault wrote back that she would not accept the "new demo" because the Lemon Law required a "comparable *new* motor vehicle," not a demonstrator. Chrysler responded that a "comparable new motor vehicle" included a demonstrator and that the vehicle it had available was comparable to Dussault's present model.

On October 13, 1997, Dussault brought this action against Chrysler alleging two independent violations of the Lemon Law. The first claim sought "the choice of either a comparable new motor vehicle or rescission of the afore-described purchase agreement, and the refund of all the monies"; the second claim alleged damages due to Chrysler's failure to repair.[1]

In November 1997, Chrysler filed a motion for summary judgment, claiming that it had fully complied with the Lemon Law by making a replacement vehicle available for Dussault. In response, Dussault again

---

[1] Dussault also alleged violations of § 402.608, STATS. (Uniform Commercial Code (U.C.C.) revocation provision), § 402.719, STATS. (U.C.C. remedy provision), Wisconsin contract law, and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301. These claims were dismissed on January 30, 1998.

stated that Chrysler was responsible for a comparable *new* motor vehicle, not a comparable *demonstrator* vehicle. At a January 12, 1998 summary judgment hearing, the trial court found that Chrysler had complied with the Lemon Law, and at a subsequent hearing held on January 30, 1998, it dismissed all of Dussault's claims. Dussault appeals.

## DISCUSSION

We review decisions on summary judgment de novo, applying the same methodology as the trial court. *See Tower Ins. Co. v. Carpenter*, 205 Wis. 2d 365, 369, 556 N.W.2d 384, 386 (Ct. App. 1996); § 802.08, STATS. That methodology has been recited often and we need not repeat it here except to note that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). Although summary judgment presents a question of law which we review de novo, we nonetheless value a trial court's decision on such a question. *See id.* at 497, 536 N.W.2d at 182.

The issues raised in this case involve the statutory interpretation of § 218.015, STATS. This presents a question of law which this court decides without deference to the trial court. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). The primary objective of statutory interpretation is to ascertain the legislature's intent. *See id.* To do this, we first consider the language of the statute; if the language clearly and unambiguously sets forth the leg-

islative intent, we will not look outside the statutory language to ascertain the intent. *See Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 441, 573 N.W.2d 522, 527 (1998). "Statutory language is ambiguous if reasonable minds could differ as to its meaning." *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 122, 561 N.W.2d 729, 734 (1997). In construing ambiguous language, we examine the history, context, subject matter, scope and object of the statute. *See id.* at 121, 561 N.W.2d at 734.

### A. *"Comparable New Motor Vehicle"*

The language "comparable new motor vehicle" is contained in § 218.015(2)(b), STATS., which provides:

> (b) 1.   If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.
> 2.   At the direction of a consumer described under sub. (1) (b) 1., 2. or 3., do one of the following:
> a.   Accept return of the motor vehicle and replace the motor vehicle with a *comparable new motor vehicle* and refund any collateral costs. [Emphasis added.]

Dussault contends that Chrysler failed to comply with § 218.015(2)(b), STATS., in providing a 1997 demonstrator to replace her 1994 demonstrator. She urges us to read the phrase "comparable new motor vehicle" as meaning a comparable "brand new" vehicle.[2] Dussault asserts that the term "new" in the phrase "comparable new motor vehicle" cannot refer to a dem-

---

[2] We interpret "brand new" motor vehicle to mean a vehicle that is not titled and is neither a demonstrator nor an executive vehicle.

onstrator because a demonstrator is by definition a "used" vehicle.

Chrysler counters that because a "motor vehicle" includes a demonstrator, a "comparable new motor vehicle" also includes a demonstrator. It asserts that Dussault's reading of § 218.015(2)(b), STATS., would render the term "comparable" meaningless because a used demonstrator (such as Dussault's vehicle) is not comparable to a brand new vehicle. Chrysler claims that an ambiguity exists as to the plain meaning of the phrase "comparable new motor vehicle," and therefore we must look to the purpose of the Lemon Law, which is "to return the purchaser of a lemon to the position he or she was in at the time the vehicle was purchased." *Church v. Chrysler Corp.*, 221 Wis. 2d 460, 470, 585 N.W.2d 685, 689 (Ct. App. 1998).

We first address Dussault's argument that the plain language of para. (2)(b) does not contemplate a demonstrator. In order for Dussault to make a claim under para. (2)(b), she must initially satisfy para. (2)(a), which provides:

> If a *new motor vehicle* does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired. [Emphasis added.]

Paragraph (2)(a) is triggered by the existence of a "new motor vehicle." Neither party disputes that the phrase "new motor vehicle" under para. (2)(a) applies to Dussault's 1994 demonstrator. Dussault asserts, and

Chrysler acknowledges, that the demonstrator's non-conformities were to be repaired. When it comes to para. (2)(b), however, Dussault asks us to adopt a different definition of "new motor vehicle." She contends that "comparable new motor vehicle" under subp. (2)(b)2.a *does not* include a demonstrator. She states that because "new" means "new," it cannot by definition include a used car, such as a demonstrator. Therefore, under this rationale, a "new motor vehicle" includes a demonstrator under para. (2)(a) but not under para. (2)(b). Dussault cannot have it both ways.

In construing "comparable new motor vehicle," we initially consider the definition of "motor vehicle," which includes "any motor driven vehicle required to be registered under ch. 341 or exempt from registration under s. 341.05(2), including a *demonstrator or executive vehicle not titled or titled by a manufacturer or a motor vehicle dealer*, which a consumer purchases or accepts transfer of in this state." Section 218.015(1)(d), STATS. (emphasis added).

Next, we look to the terms "comparable" and "new," neither of which is defined nor mentioned in the definition of "motor vehicle." "[I]t is a basic rule of statutory construction that . . . effect is to be given, if possible, to each and every word, clause and sentence in a statute, and a construction that would result in any portion of a statute being superfluous should be avoided wherever possible." *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 164, 288 N.W.2d 129, 135 (1980). We read the term "comparable" to mean a similar model vehicle with similar features, such as the type of engine, transmission, brakes, seat upholstery and accessories.

As to the word "new," Dussault points out that WIS. ADM. CODE § TRANS. 139.02(11) defines a "new" motor

vehicle as "any untitled or non-privately titled motor vehicle of the stated model year *which has not been a demonstrator*." We are not convinced that this definition applies to the Lemon Law. Section TRANS. 139.01(1) states that the purpose of ch. 139 is "to establish the department's administrative interpretation of ss. 218.01 (3) (a) 6., 9., 14., 18., 19., and 22., 218.01 (5m), 218.01 (7a) and 342.16 (1m), Stats." Because § 218.015, STATS., is not listed within the coverage of § TRANS. 139.01, and because § 218.015 has its own definitional section, we choose not to rely on the administrative code definitions. Additionally, if we were to adopt the definition of "new" in § TRANS. 139.02(11), then Dussault's 1994 demonstrator could not qualify in the first instance as a "new motor vehicle" under para. (2)(a) because § TRANS. 139.02(11) expressly excludes demonstrators.

We believe that reasonable persons can differ as to the meaning of the phrase "comparable new motor vehicle." Because the definition of "motor vehicle" includes a demonstrator *that is not titled,* we are uncertain what the term "new" adds. If "new" meant "not titled," then "new" would be superfluous. If "new" meant "brand new," demonstrators would be excluded. If "new" referred to vehicles "before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner," *see* § 218.015(2)(a), STATS., then demonstrators, "brand new" vehicles and previously-owned vehicles would be covered.[3] Because the meaning of "new" is unclear

---

[3] Recently, in *Schey v. Chrysler Corp.*, 228 Wis. 2d 483, 597 N.W.2d 457 (Ct. App. 1999), we determined that § 218.015(2)(a), STATS., is ambiguous as to whether a previously-owned vehicle qualifies as a "new motor vehicle." We

under the Lemon Law, we conclude that "comparable new motor vehicle" is ambiguous.

In order to reconcile this ambiguity, we must consider the purpose of the Lemon Law. In *Hughes*, our supreme court reviewed the history of Lemon Laws in general in an attempt to decipher the legislative intent. There, the court stated that "[t]he intent behind the law [is] to 'improve auto manufacturers' quality control . . . [and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure.' " *Hughes*, 197 Wis. 2d at 982, 542 N.W.2d at 151 (quoted source omitted; third and fourth alterations in original). More importantly, for our purposes the Lemon Law seeks "to provide an incentive for a manufacturer to put the purchaser of a new car back to the position the purchaser thought he or she was in at the time they bought the car." *Id.* at 976, 542 N.W.2d at 149.

█

When Dussault first purchased her 1994 Eagle Vision in July 1995, the vehicle was a demonstrator with 6302 miles, a six-cylinder engine, an automatic transmission and leather seats, and the suggested retail price was $25,787. In October 1997, Chrysler offered to replace her vehicle with a 1997 Eagle Vision that was a demonstrator with 5728 miles, a six-cylinder engine, an automatic transmission and leather seats, and the suggested retail price was $26,290. The replacement vehicle had similar features as the original vehicle; the only significant difference was that the replacement was three years newer than the original vehicle. We are satisfied that Chrysler fulfilled its obligation by offering to replace Dussault's "lemon" with a

concluded that the legislature did not intend the Lemon Law to include such vehicles.

vehicle that put her in the position she thought she was in at the time she purchased the original car. *See id.* Thus, we conclude that a manufacturer satisfies its obligation to provide a "comparable new motor vehicle" under para. (2)(b) by replacing a nonconforming demonstrator with a late-model demonstrator with comparable features.

### B. Alternative Claim Under § 218.015(2)(a), STATS.

Dussault next contends that she was entitled to pursue an alternative claim under § 218.015(2)(a), STATS., notwithstanding her para. (2)(b) claim. While the trial court acknowledged that an alternative claim existed pursuant to *Vultaggio*, the court ruled that Dussault had nonetheless "elected her remedy" by offering to transfer title to her vehicle back to the manufacturer under para. (2)(b). The court concluded that Dussault had waived her para. (2)(a) claim. Dussault argues that the court's decision was in error because § 218.015(6) expressly provides that "[a]ny waiver by a consumer of rights under this section is void."

Chrysler responds that paras. (2)(a) and (2)(b) do not provide separate and independent causes of action. It argues that even if *Vultaggio* were interpreted to recognize separate actions, summary judgment would still be appropriate because the Lemon Law is only triggered when the manufacturer fails to replace a vehicle or offer a refund within thirty days of the demand.

In *Vultaggio*, the plaintiffs appealed the trial court's grant of summary judgment to General Motors on the plaintiffs' breach of warranty and Lemon Law claims. The plaintiffs argued that para. (2)(a) "creates a separate basis for relief under sec. 218.015(7) and is a remedy independent of sec. 218.015(2)(b)." *Vultaggio,*

145 Wis. 2d at 889, 429 N.W.2d at 98 (footnotes omitted). General Motors asserted, as Chrysler argues here, that para. (2)(a) is merely an introductory paragraph that does not create a cause of action in and of itself. We rejected General Motors' argument, stating:

> Section 218.015(7), Stats., provides in pertinent part that "[i]n addition to any other remedies, a consumer damaged by violation of *this section* may bring an action . . . ." (Emphasis added.) A manufacturer who fails to repair a nonconformity reported to it pursuant to sec. 218.015(2)(a) has violated its duty under "this section"—sec. 218.015. Had the legislature intended to limit the availability of actions under sec. 218.015(7) to those arising under [para.] (2)(b) rather than the section as a whole, it could have easily done so.

*Vultaggio*, 145 Wis. 2d at 890–91, 429 N.W.2d at 99 (first alteration in original).

Our decision in *Vultaggio* clearly identifies a separate cause of action under para. (2)(a). However, we also narrowed the para. (2)(a) cause of action by limiting it to plaintiffs who were unable to demonstrate the "reasonable attempt to repair" requirement under para. (2)(b). We explained that

> [paragraph] (2)(a) protects the consumer from those instances in which the *consumer is unable to establish the "reasonable attempt to repair"* necessary under sec. 218.015(2)(b), Stats., but can show that the dealer has not, cannot, or will not repair a nonconformity brought to its attention during the warranty period. In accord with the remedial purpose of sec. 218.015, that consumer should still be afforded relief.

307

*Vultaggio*, 145 Wis. 2d at 891, 429 N.W.2d at 99 (emphasis added; footnote omitted). We concluded that a question of fact remained as to whether General Motors had been provided a "reasonable attempt to repair" the vehicle. Presumably, upon remand the trial court would have then addressed a para. (2)(b) claim if it had found a "reasonable attempt to repair" or a para. (2)(a) claim if the "reasonable attempt to repair" requirement had not been met.

Here, Dussault alleged in her complaint that Chrysler had been offered a "reasonable attempt to repair" the vehicle because it had not been fixed after thirty days or four attempts. *See* § 218.015(1)(h), STATS. Chrysler conceded this fact. Therefore, there is no dispute that Dussault established a "reasonable attempt to repair." As a consequence, because a para. (2)(a) remedy is only intended for a "consumer [who] is unable to establish the 'reasonable attempt to repair,'" *Vultaggio*, 145 Wis. 2d at 891, 429 N.W.2d at 99, Dussault has no claim under para. (2)(a).

We note that while § 218.015(6), STATS., precludes waiver of a consumer's right under the Lemon Law, Dussault did not technically "waive" her para. (2)(a) claim here. Waiver involves the "voluntary and intentional relinquishment of a known right." *Von Uhl v. Trempealeau County Mut. Ins. Co.*, 33 Wis. 2d 32, 37, 146 N.W.2d 516, 519 (1966). Waiver is not at issue in this case because once the court determined that Dussault had established a "reasonable attempt to repair," by operation of law only a para. (2)(b) remedy remained. Therefore, she could not have voluntarily or intentionally relinquished a right under the Lemon Law. Thus, we conclude that the court properly deter-

mined that she was precluded from seeking a para. (2)(a) claim.

### C. Other Issues

Dussault additionally asks this court to rule as a matter of law that color is a factor to be considered in making a determination as to whether a replacement vehicle is "comparable." She argues that the court was wrong to reject her claim that the purple replacement vehicle was not comparable to her original "emerald green" vehicle.

Dussault first raised this objection at the second summary judgment motion hearing. There, her attorney claimed that they had not realized that the replacement vehicle was purple even though the invoice described the vehicle as "deep amethyst." Her attorney asserted that purple was not an acceptable color to Dussault. The court denied her claim, concluding that amethyst was a "pretty common color" and that the Lemon Law did not require an "identical" replacement vehicle.

■

At issue here is whether the trial court properly granted summary judgment. It is incumbent upon the plaintiff to demonstrate that sufficient evidence exists to go to trial in order to survive a motion for summary judgment. *See Kaufman v. State St. Ltd. Partnership*, 187 Wis. 2d 54, 58, 522 N.W.2d 249, 251 (Ct. App. 1994). The court must examine the opposing party's affidavits and other proof "to determine whether there exist disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the opposing party to a trial." *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). Papers supporting or

opposing a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." Section 802.08(3), STATS. An affidavit submitted by an attorney containing matters not within his or her personal knowledge may not be considered in support of a motion for summary judgment. *See Hopper v. City of Madison*, 79 Wis. 2d 120, 130–31, 256 N.W.2d 139, 143–44 (1977).

At the motion hearing, Dussault's attorney simply asserted that a purple car was unsatisfactory. In support of his claim, he provided an affidavit, subscribed by himself, stating that "upon viewing the supposed replacement vehicle, the plaintiff informed me that the color of the vehicle was unacceptable to her, and that her husband would not accept a vehicle of that color." Dussault, however, did not provide any evidence of her own, such as photographs or personal affidavits. Her attorney's affidavit describing her feelings about the purple replacement vehicle does not constitute "personal knowledge" on her part. "An affidavit by an attorney on behalf of his client is not the affidavit of the client and is no more effective than one made by a nonparty." *Dottai v. Altenbach*, 19 Wis. 2d 373, 376, 120 N.W.2d 41, 43 (1963). Because Dussault's attorney's affidavit is nonevidentiary, we conclude that it was insufficient to defeat Chrysler's motion for summary judgment.

Finally, Chrysler requests that we award it the floor plan costs and depreciation on the replacement vehicle caused by Dussault's refusal to accept the replacement. It asserts that "she created excess and unnecessary expense to the defendant, Chrysler. Just as the manufacturer must be accountable under the

310

Lemon Law, so too must consumers." While Chrysler presents an intriguing issue under the Lemon Law as to whether a manufacturer may recover costs for a consumer's refusal to accept a replacement vehicle, it provides no legal authority for its claim. Therefore, we decline to consider it. *See Village of Egg Harbor v. Sarkis*, 166 Wis. 2d 5, 17, 479 N.W.2d 536, 541 (Ct. App. 1991).

For the foregoing reasons, we affirm the trial court's summary judgment dismissing Dussault's claims.

*By the Court.*—Judgment affirmed.