Peter Kiss, Plaintiff-Appellant,

v.

General Motors Corporation, Defendant-Respondent,

Bob Fish Pontiac-Cadillac-GMC Truck, Inc., Defendant.

Court of Appeals

*No. 00–0626. Oral argument March 1, 2001.—Decided May 9, 2001.*

2001 WI App 122

(Also reported in 630 N.W.2d 742.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William S. Pocan, Vincent P. Megna* and *Susan M. Grzeskowiak* of *Jastroch & Labarge, S.C.* of Waukesha. There was oral argument by *Vincent P. Megna.*

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kim M. Schmid, C. Paul Carver* and *Kevin P. Curry* of *Bowman and Brooke LLP* of Minneapolis, Minnesota. There was oral argument by *C. Paul Carver.*

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. This case presents two issues of first impression under WIS. STAT. § 218.015 (1997–98),[1] Wisconsin's "Lemon Law." The first is whether a manufacturer fulfills its obligation to provide a "comparable new motor vehicle" under § 218.015(2)(b) by offering to replace a consumer's nonconforming tow truck with a new cab and chassis but without a new tow unit. Based on prior case law interpreting the language and public policy of the Lemon Law, we conclude that the statute requires the replacement of a nonconforming tow truck with a new tow unit along with the new cab and chassis.

¶ 2. The second issue is whether a consumer may pursue an action for damages under WIS. STAT. § 218.015(7) after the consumer has accepted an informal dispute settlement decision pursuant to

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version, which was in effect at the time this action commenced. The current version of Wisconsin's Lemon Law statute is found at WIS. STAT. § 218.0171 (1999–2000). In 1999, the statute was renumbered, but the substance of the law is unchanged. *See* 1999 Wis. Act 31, § 287.

§ 218.015(3) or, alternatively, whether the consumer's remedy to enforce the decision is limited to WIS. STAT. ch. 788 governing enforcement of arbitration awards. We conclude that once a consumer resorts to a certified informal dispute settlement procedure, the consumer is not limited to enforcement under ch. 788, but may file a cause of action for damages under § 218.015(7).

¶ 3. On January 20, 1997, Peter Kiss purchased a new 1997 GMC Sierra 3500 HD Tow Truck from Bob Fish Pontiac-Cadillac-GMC Truck, Inc., an authorized dealer for General Motors Corporation (GM). At the time of purchase and acceptance, the Vulcan 882 towing package had been fully installed by the dealer. The dealer purchased the towing package from Vulcan; GM did not manufacture or warrant the towing accessories.

¶ 4. Shortly after Kiss took delivery of the tow truck, he experienced substantial problems with the performance of the vehicle. Kiss did not experience any problems with the Vulcan 882 towing package.

¶ 5. In October 1997, Kiss filed a pro se Lemon Law claim with BBB Autoline, GM's certified informal dispute settlement procedure. On December 15, 1997, the dispute settlement tribunal issued a decision in favor of Kiss, requiring GM to replace the vehicle within thirty days of Kiss's acceptance of its decision. On January 26, 1998, Kiss accepted the dispute settlement decision by completing the BBB Autoline form entitled Acceptance or Rejection of Decision. GM received notification of Kiss's acceptance by February 13, 1998, and was thus obligated to provide a comparable new motor vehicle by mid-March 1998.

¶ 6. During February and March, it became clear that the dealership did not have a new Sierra truck that suited Kiss's preferences. GM offered to manufacture a new truck to meet Kiss's specifications, which

would take six to eight weeks, and offered to transfer the old tow unit to the new truck. GM also notified BBB Autoline that it would be unable to satisfy the time frame specified in the settlement decision.

¶ 7.    Kiss rejected GM's offer to transfer the old tow unit to a new cab and chassis. Kiss's position was that the settlement decision required GM to replace the towing package along with the cab and chassis. GM's position was that the decision required GM to replace only the cab and chassis. Negotiations continued through the summer, and at one point, GM offered to repurchase the tow truck for the full sale price, including the Vulcan towing package. Kiss refused this offer.

¶ 8.    On October 13, 1998, Kiss, through his counsel, sent a demand letter to GM offering to transfer title of the "lemon" vehicle in return for a comparable new motor vehicle. Still unable to reach an agreement, Kiss brought this action against GM, alleging that GM failed to timely offer a comparable new motor vehicle and seeking double damages. On May 6, 1999, GM filed a motion for summary judgment, claiming that it had fully complied with the Lemon Law by making a replacement vehicle available to Kiss.[2] On December 15, 1999, the trial court ruled in GM's favor and dismissed Kiss's claims.[3] Kiss now brings this appeal.

---

[2] The dealership also filed a motion for summary judgment. The trial court granted the motion in its entirety. Because Kiss does not appeal that decision, the dealership is not a party to the appeal.

[3] Kiss also alleged violations of WIS. STAT. § 402.608 (U.C.C. revocation provision), WIS. STAT. § 402.719 (U.C.C. remedy provision), WIS. STAT. § 402.314 (U.C.C. merchantability provision), WIS. STAT § 402.315 (U.C.C. not fit for particular purpose), and the Magnuson-Moss Warranty—Federal Trade Commission

¶ 9. We review summary judgment decisions de novo, applying the same methodology as the trial court. *Tower Ins. Co. v. Carpenter*, 205 Wis. 2d 365, 369, 556 N.W.2d 384 (Ct. App. 1996). That methodology is well established and we need not repeat it here except to note that summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995).

## Comparable New Motor Vehicle

¶ 10. The language "comparable new motor vehicle" is contained in WIS. STAT. § 218.015(2)(b), which provides:

> (b) 1. If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.
> 2. At the direction of a consumer described under sub. (1)(b)1., 2. or 3., do one of the following:
> a Accept return of the motor vehicle and replace the motor vehicle with a *comparable new motor vehicle* and refund any collateral costs. (Emphasis added.)

Kiss contends that GM has never fully complied with its obligation under the Lemon Law because it has offered only a new cab and chassis along with the transfer of the old tow package from the "lemon." According to Kiss, this is not a comparable new motor

Improvement Act, 15 U.S.C. § 2301 (2000). Kiss does not appeal the trial court's decision with respect to these claims.

vehicle under the statute because the statute does not contemplate transferring used parts and accessories from the "lemon" vehicle to the replacement vehicle. GM counters that the Lemon Law does not require a manufacturer to replace a tow unit that the manufacturer did not manufacture, sell or warrant.

¶ 11.   We first observe that the plain language of the statute does not define the word "comparable." We have previously interpreted "comparable" to mean "a similar model vehicle with similar features, such as the type of engine, transmission, brakes, seat upholstery and accessories." *Dussault v. Chrysler Corp.*, 229 Wis. 2d 296, 303, 600 N.W.2d 6 (Ct. App. 1999). We concluded in *Dussault* that the manufacturer satisfied its obligation to provide a comparable new motor vehicle under the Lemon Law by replacing a nonconforming demonstrator with a late-model demonstrator with comparable features. *Id.* at 306. The comparable features in that case included a six-cylinder engine, automatic transmission, leather seats and similar retail price. *Id.* at 305. Replacement of a demonstrator with another demonstrator, rather than a brand new vehicle, put the plaintiff in the position she thought she was in at the time of purchase. *Id.* at 305–06.

¶ 12.   Applying *Dussault* to these facts would require GM to replace the tow package since the towing unit was an integral feature of the vehicle at the time of purchase. GM argues, however, that *Dussault*'s definition of "comparable" applies only to features supplied by the manufacturer and standard factory parts, and not to third-party modifications that GM has not manufactured, sold, distributed or warranted.

¶ 13.   In support of its position, GM relies primarily on *Malone v. Nissan Motor Corp.*, 190 Wis. 2d 436, 526 N.W.2d 841 (Ct. App. 1994). In *Malone*, a car buyer

purchased a new Nissan and at the same time ordered a spoiler installed on the vehicle. *Id.* at 439–40. The spoiler was not manufactured by Nissan and was not covered by Nissan's warranty. *Id.* at 440. The spoiler was defective and the car buyer sued Nissan under the Lemon Law. *Id.* This court held that the Lemon Law was not intended "to make automobile manufacturers 'super warrantors' of all automobile parts and products, particularly those which the automobile manufacturer does not manufacture, sell or supply." *Id.* at 442. We were especially concerned in that case with making manufacturers liable for defects in accessories made by third parties because this would relieve third-party manufacturers from liability. "[T]hey could manufacture and distribute poor quality products knowing that the car manufacturer would be liable if the accessory was defective." *Id.*

¶ 14.   GM also relies on *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024 (7th Cir. 1993), which we discussed in *Malone.* In *Bushendorf,* the engine of a large truck failed to meet the plaintiff's expectations. *Bushendorf,* 13 F.3d at 1025. The plaintiff commenced a Lemon Law suit targeting the manufacturer of the truck. *Id.* at 1026. The Seventh Circuit held that since the truck manufacturer did not manufacture or warrant the engine, a Lemon Law claim against it was invalid. *Id.* at 1026–27.

¶ 15.   GM contends that these cases stand for the proposition that a manufacturer cannot be held responsible under the Lemon Law for parts it did not manufacture or warrant. This reading of the case law is too broad and fails to consider the underlying policy concerns addressed by those courts. The primary concern in *Malone* was that third-party manufacturers of accessories bear the cost of defective products. This

case, however, does not involve a defective accessory. No complaint has ever been made with respect to the Vulcan towing equipment. Therefore, making GM replace this nondefective accessory in order to provide Kiss with a comparable new vehicle does not relieve Vulcan of any responsibility with respect to Vulcan equipment. Liability for defects that may arise in the towing unit, a dealer-added accessory, resides with Vulcan as the manufacturer and warrantor of the product. Indeed, if Kiss had alleged defects in the towing package, he clearly would not have had a claim against GM under the Lemon Law. But that is not the case here. Kiss's underlying Lemon Law claim is based upon the vehicle itself which is entirely under GM's warranty. We agree with Kiss, therefore, that *Malone* and *Bushendorf* do not govern this case.[4]

¶ 16. To hold otherwise would impute greatly disparate remedies into the Lemon Law which the legislature could not have intended. WISCONSIN STAT. § 218.015(2)(b)2 provides that if the nonconformity is not repaired, the manufacturer must accept the return of the vehicle and, at the consumer's request, either replace the vehicle or refund the consumer's money paid at the point of sale. Had Kiss elected refund of the purchase price at point of sale, he would have received an amount in excess of $43,000.00. This figure reflects the value of the cab and chassis and the Vulcan towing

---

[4] Consider the result in *Malone* had the facts been different. Suppose, for example, that Malone had alleged nonconformities in warranted parts of the vehicle, rather than the dealer-added spoiler. We have no doubt in that case the manufacturer would have had to replace the spoiler in order to provide a comparable new motor vehicle to the consumer. We do not imagine the manufacturer would have transferred the nondefective spoiler from the "lemon" to the replacement vehicle.

equipment. Indeed, during negotiations GM offered to repurchase the "lemon" for $44,751.72. Kiss steadfastly requested replacement instead of a refund. It is illogical to argue that under the replacement provision of the Lemon Law, Kiss is entitled only to the cab and chassis (a value of about $24,000) while under the refund provision, he is entitled to the full value paid at the point of sale.[5] This anomalous result would render the replacement option a nullity for consumers who purchase dealer-added accessories not manufactured or warranted by the manufacturer.

---

[5] GM does not quite concede that the amount paid by the consumer at the point of sale under WIS. STAT. § 218.015(2)(b)2.b includes third-party modifications and equipment. Nonetheless, the evidence shows that GM offered to pay the full purchase price in an attempt to settle the matter. We are well aware that WIS. STAT. § 904.08 states that an offer to compromise is inadmissible in evidence to prove, among other things, that a party concedes liability or the amount of money due. However, § 904.08 was never at issue with the parties. Moreover, we do not use this evidence as proof that GM has conceded liability or that it was conceding the amount of money due or owing. Nor could we do so since that would be fact-finding—an exercise that this court does not engage in. Rather, we use it as part of the following observation: While we are not asked today to define the meaning of "amount paid by the consumer at the point of sale," we see no indication that it means other than what it explicitly says. That is, the amount paid by the consumer at the point of sale is anything paid for by the consumer that day, including nonmanufacturer options paid for at the time of the sale whether installed prior to sale or after, less a reasonable amount for use, and any rebates received by the consumer. *See Church v. Chrysler Corp.*, 221 Wis. 2d 460, 470–71, 585 N.W.2d 685 (Ct. App. 1998).

¶ 17. Furthermore, transferring the current tow package does not place Kiss in the same position he thought he was in at the point of sale. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 986, 542 N.W.2d 148 (1996). At that time, Kiss thought he was getting a brand new tow truck with full warranties. If the tow unit is transferred to a new cab and chassis, he gets an old tow package with an expiring warranty. It also opens the door to all sorts of troublesome possibilities, such as compromising the integrity of the tow unit or the replacement vehicle. Simply put, transferring nondefective automobile accessories into replacement vehicles is not contemplated within the Lemon Law statute or consistent with its public policy of returning "unfortunate consumers back to where they thought they were when they first purchased that new automobile." *Id.*

**BBB Autoline Decision**

¶ 18. BBB Autoline is GM's certified informal dispute settlement procedure that a consumer is required to submit to before he or she can pursue a Lemon Law claim against GM. *See* WIS. STAT. § 218.015(3). The dispute settlement tribunal issued a decision in this matter on December 15, 1997. GM agrees that the tribunal ruled in favor of Kiss, but GM further asserts that the decision unambiguously requires it only to replace the cab and chassis. First, GM argues, the dispute settlement award is governed by applicable law, including *Malone* and *Bushendorf*, which limits the authority of the tribunal to require replacement of the tow package. Second, the plain language of the dispute settlement decision awarded replacement of the cab and chassis but not the tow

unit. We reject GM's first argument in light of the previous discussion holding that *Malone* and *Bushendorf* do not control this case. We now consider GM's second argument.

██

¶ 19.    Looking at the plain language of the decision, we agree with Kiss that it unambiguously requires GM to provide Kiss with a new tow unit as well as the new cab and chassis. The dispute settlement decision expressly states:

> [GM] shall replace the 1997 GMC Sierra ("vehicle") owned/leased by [Kiss] within 30 days after the manufacturer is notified that the customer has accepted this decision, *with a new motor vehicle that is substantially identical to the replaced vehicle (not including any modifications or additions after the vehicle's purchase or lease), and of the same model year as the replaced vehicle.* (Emphasis added.)

By its terms, GM is excused from replacing only those modifications or additions installed after Kiss purchased the vehicle. Further clarification is found in the Reasons for Decision:

> a.    Was the alleged problem caused by abuse, neglect, or unauthorized modification or alteration of the vehicle by a consumer?

> No. *This vehicle was sold as a tow truck: The tow package (GM authorized) was added by an authorized dealer prior to customer's purchase / acceptance of unit.* (Emphasis added.)

Reading these two sections together, we can only conclude that a substantially identical replacement vehicle is one that possesses all the modifications/additions that the "lemon" possessed as of the

date of purchase. Here, the informal dispute settlement tribunal explicitly recognized that the tow unit was installed by the dealer prior to purchase. Therefore, GM must replace it in order to provide Kiss with a new motor vehicle that is substantially identical to the replaced vehicle.

¶ 20.  Because GM never offered to provide a new tow unit along with a new cab and chassis, either after the dispute settlement decision or after the October 1998 demand letter, we conclude that GM has failed to comply with the Lemon Law. We now consider whether Kiss can pursue a Lemon Law claim to enforce the dispute settlement award. We requested the parties to submit supplemental briefs on this issue and heard oral argument on March 1, 2001.

**Enforcement of the Dispute Settlement Decision**

¶ 21.  GM's position is that Kiss's acceptance of the dispute settlement award bars suit under the Lemon Law. GM concedes that if Kiss had rejected the award, his recourse would have been to pursue a Lemon Law claim under WIS. STAT. § 218.015(7) for double damages and attorney's fees. However, there is no precedent governing appeal from a Lemon Law dispute settlement decision after acceptance. GM posits that Wisconsin's Arbitration Act, contained in WIS. STAT. ch. 788, should provide the only available remedy for enforcement of a Lemon Law dispute settlement award. Kiss counters that his acceptance of the dispute settlement decision does not preclude suit under the Lemon Law because that law specifically prohibits any waiver or limitation of a consumer's rights. Sec. 218.015(6). Forcing Kiss to resort to ch. 788, which does not allow an award for double damages or attorney's

fees,[6] would improperly limit his remedies. Kiss contends that this is a result that would defeat the purpose of the Lemon Law.

■

¶ 22.  We begin our analysis with the standard of review. Determining whether enforcement of a dispute settlement decision must be pursued through WIS. STAT. ch. 788 rather than through a Lemon Law claim for damages requires that we interpret the applicable statutes. A question of statutory interpretation is a question of law that we review independently of the trial court. *Morris v. Juneau County*, 219 Wis. 2d 543, 550, 579 N.W.2d 690 (1998). Our goal is to discern and give effect to the intent of the legislature. *Id.* If a statute is unambiguous, this court will apply the ordinary and accepted meaning of the language of the statute to the facts before it. *Jones v. State*, 226 Wis. 2d 565, 587–88, 594 N.W.2d 738 (1999). Furthermore, conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed. *Id.* at 576.

¶ 23.  We hold that the statutes in question are not vague or ambiguous; neither do they overlap. The Wisconsin Arbitration Act, set forth in WIS. STAT. ch. 788, relates to the relief to which a party to arbitration is entitled.[7] Under its provisions, a party is limited to

---

[6] *See Finkenbinder v. State Farm Mut. Auto. Ins. Co.*, 215 Wis. 2d 145, 151–52, 572 N.W.2d 501 (Ct. App. 1997) (finding no statutory authority for awarding costs in an arbitration proceeding under WIS. STAT. ch. 788).

[7] The Wisconsin Arbitration Act contains the following provision:

**788.01  Arbitration clauses in contracts enforceable.** A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to

enforcement, vacation or modification of an arbitration award. It does not provide any additional relief to a party who is aggrieved by the failure of another party to comply with an arbitration decision. Most importantly, from the consumer's perspective, ch. 788, unlike the Lemon Law, does not permit a party to recover attorney's fees and costs. It therefore would provide only limited relief to a consumer who is required to resort to a certified informal dispute settlement procedure prior to filing suit under the Wisconsin Lemon Law.

¶ 24. The Lemon Law, on the other hand, is a remedial statute that seeks to provide an incentive for a manufacturer to put the purchaser of a new vehicle back to the position the purchaser thought he or she was in at the time the vehicle was purchased. *Hughes*, 197 Wis. 2d at 976. The incentive consists of an award of double damages and attorney's fees when the manufacturer fails to timely comply with the statute. If the manufacturer has an informal dispute settlement mechanism, the consumer must resort to it before filing his or her Lemon Law claim. Sec. 218.015(3). In this case, Kiss resorted to the procedure as he was mandated to do.

¶ 25. We find no persuasive authority to support GM's position that enforcement of the settlement decision is limited to WIS. STAT. ch. 788. The Lemon Law does not, on its face, speak to whether a consumer is barred from pursuing a WIS. STAT. § 218.015(7) claim

perform the whole or any part of the contract, or an agreement in writing between 2 or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable . . . .

WIS. STAT. § 788.01.

after he or she resorts to the dispute settlement procedure. Nor is ch. 788 referred to anywhere in the statute. Indeed, the word "arbitration," a term of legal art, does not appear in the Lemon Law statute either. The case law defines "arbitration" as "a proceeding voluntarily undertaken by parties who want a dispute determined on the merits of the case by an impartial decision maker of their choosing, which decision the parties agree to accept as final and binding." *Stradinger v. City of Whitewater*, 89 Wis. 2d 19, 31, 277 N.W.2d 827 (1979). By its very terms, the Lemon Law statute, which explicitly precludes the waiver of a consumer's rights and also perserves the right of a consumer to pursue any other remedy, is not providing for arbitration. WIS. STAT. § 218.015(5) and (6). Instead, the relevant Lemon Law language states: "If there is available to the consumer an informal dispute settlement procedure which is certified under sub. (4), the consumer may not bring an action under sub. (7) unless he or she first resorts to that procedure." Sec. 218.015(3). Nothing in this language implies that a consumer who accepts a decision terminates his or her Lemon Law rights. Had the legislature intended to restrict application of the Lemon Law remedies in this way, it could easily have done so. It did not.

¶ 26. The fact that the word "arbitration" appears in the BBB Autoline decision and other BBB Autoline documents is immaterial to our statutory analysis. If we gave credence to the term "arbitration" as it is used by BBB Autoline, we would be violating both the letter and the spirit of the Lemon Law as envisioned by our legislature. We suggest that BBB Autoline eliminate the word "arbitration" from its materials and rename its procedure "informal dispute settlement procedure." We further suggest the neutral

third party decision-maker should be more accurately described.

¶ 27. GM cites to cases holding that agreements to arbitrate will be enforced even if the applicable statute does not explicitly authorize or prohibit arbitration. *See Jones v. Poole*, 217 Wis. 2d 116, 120, 579 N.W.2d 739 (Ct. App. 1998). The crucial fact in *Jones*, however, was that the parties had an insurance contract in which they had agreed to settle disputes through arbitration. *Id.* at 121. Here, there is no conventional contractual commitment to arbitrate. GM conceded as much in oral argument. Kiss resorted to the dispute settlement mechanism only because he was required to do so prior to commencing a WIS. STAT. § 218.015(7) claim.

¶ 28. Furthermore, the legislature explicitly provided that the protections of the Lemon Law cannot be waived. WIS. STAT. § 218.015(6) ("[a]ny waiver by a consumer of rights under this statute is void"). GM's position that Kiss's acceptance of the dispute settlement decision limits his recourse to WIS. STAT. ch. 788 is essentially a waiver of Lemon Law remedies. We agree with Kiss that this would contravene the non-waiver provision of the Lemon Law.

¶ 29. GM contends that "if the Lemon Law obligation to submit to arbitration is to have sufficient force to achieve the goal of encouraging settlement[ ], plaintiffs must be required to perform *their obligations* under those agreements. Otherwise, the dispute settlement requirement becomes simply a meaningless hoop that consumers must jump through on their way to double damages." (Emphasis added.) GM presumes that Kiss had an obligation under the informal dispute settlement decision. We do not agree. The form that

Kiss signed to accept the decision contained the following language:

> ___ I ACCEPT THE ARBITRATION DECISION. I understand this means the business will be legally bound to abide by this decision.

Nowhere does it state that the consumer is legally bound or that he or she has given up other Lemon Law remedies. This comports with the Department of Transportation's regulations that were promulgated in response to WIS. STAT. § 218.015(4) (requiring DOT to adopt rules for informal dispute settlement procedures). WISCONSIN ADMIN. CODE § Trans 143.06(11) states that "[d]ecisions of the certified mechanism shall be legally binding on the manufacturer." In addition, the decision must include a statement that it is binding upon the warrantor and not the consumer. Sec. Trans 143.06(4)(d)4.[8]

¶ 30.  Finally, this court in the past has interpreted the Lemon Law to be a "stand alone" statute which is not dependant upon or qualified by other statutes. *See Herzberg v. Ford Motor Co.*, 2001 WI App 65, ¶ 15, 242 Wis. 2d 316, 626 N.W.2d 67. In *Herzberg,* Ford Motor Company conditioned its refund offer upon the Herzbergs providing information on the condition of the vehicle. This information could have been required under the U.C.C. This court refused to harmonize the Lemon Law with other statutory provisions, stating that consumers' obligations under the Lemon Law cannot be expanded. *Id.* at ¶ 17. The court also

---

[8] The BBB Autoline Program Summary, which summarizes consumers' rights in the dispute settlement mechanism, states, "[T]he arbitrator's decision is not binding on you. You may accept or reject the decision. If you accept the decision, the manufacturer is bound to comply with it."

refused to read into the Lemon Law the good faith requirements of the common law of contracts. *Id.* at ¶ 18. Instead, the obligation to act in good faith is rooted in the Lemon Law itself. *Id.* Similarly, in *Chariton v. Saturn Corp.*, 2000 WI App 148, ¶ 5, 238 Wis. 2d 27, 615 N.W.2d 209, the court refused to read into the Lemon Law a requirement that a consumer sign a release as a condition to receiving the refund. In light of these cases, we should not impute into the Lemon Law the limited remedies available under WIS. STAT. ch. 788. To do so would lessen the effectiveness of Wisconsin's Lemon Law by granting manufacturers' certified mechanisms more power than the law intended.

¶ 31.  In conclusion, we hold that GM violated the Lemon Law by failing to provide a comparable new motor vehicle in conformance with the settlement decision. We further hold that Kiss is entitled to seek enforcement of that decision through a Lemon Law claim under WIS. STAT. § 218.015(7). Accordingly, we reverse the order of summary judgment and remand the case for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.