STRONG, Respondent, v. SHAWANO CANNING COMPANY, INC., and another, Appellants.

*May 1—June 6, 1961.*

606

For the appellants there was a brief by *Callahan & Arnold* of Columbus, and oral argument by *Clark Arnold* and *Carroll B. Callahan*.

For the respondent there was a brief by *Sigman, Sigman & Shiff* of Appleton, and oral argument by *Samuel Sigman*.

BROADFOOT, J.   The defendants rely upon two paragraphs appearing in the contract as defenses to the claim for damages. The tenant referred to in the contract is Shawano Farms, Inc., and the landlord is the plaintiff. The first of said paragraphs appears in section 3 of the contract, and reads as follows:

"Should tenant be unable profitably to harvest or utilize for canning purposes the sweet-corn crop or any part thereof, the landlord's rental compensation as to the crop or part thereof not so harvested or utilized shall consist only of his right to use such crop for the feeding of livestock."

The defendants contend that the language in said paragraph is clear and unambiguous; that the corn raised by the plaintiff was not harvested or utilized according to the plain language thereof and therefore the plaintiff is entitled as damages only to the crop for use as livestock feed. It is contended that all words in a contract should be given effect and that the trial court's construction thereof eliminates the provisions of said paragraph and makes the whole paragraph surplusage.

The second paragraph relied upon by the defendants, numbered 8(b), reads as follows:

"Neither landlord nor tenant shall be responsible for the nonperformance of any obligation hereunder caused by act of God, wind, fire, earthquake, floods, frost, action of the elements, strike, riots, accidents to or failure of machinery or parts, inability to procure essential supplies, labor, transportation facilities or equipment from usual sources, or any

other causes reasonably beyond the control of the affected party."

Relying upon the provisions thereof the defendants contend that the evidence is overwhelming to the effect that the corn bunched in the last days of August, 1959, and, although the defendants tried, they were unable to obtain additional labor or mechanical pickers to pick the corn. They contend there is no credible evidence to support the jury finding that the defendants were not prevented from timely harvesting the sweet corn because of their inability to procure the necessary labor or equipment.

The record discloses that the Shawano Canning Company operates three canning factories, in two of which they planned to can sweet corn in 1959. Those plants were located at Clintonville and at Shawano. They had contracts for the raising of 650 acres of sweet corn for the Clintonville plant and 450 acres for the Shawano plant. The farmers were directed to plant the sweet corn on certain dates with the expectation that it would mature approximately three months thereafter. The average temperature in the area was above normal the latter part of August and the corn matured and was ready for canning sooner than anticipated by the defendants. The testimony shows that several fields were ready for harvesting at the same time. In prior years the defendants had never failed to harvest sweet corn pursuant to their contracts. In 1958 the defendants owned two mechanical pickers and rented a third. This machine was sold by its owner in late 1958 or early 1959 and was not available for rental, which fact was known to the defendants. The defendants made no effort to secure additional mechanical pickers prior to August 26, 1959. They made no attempt to purchase a machine but attempted to rent one from other canning companies and from the Food Machinery Company in Illinois. None was available at that time. One mechanical picker would harvest 20 acres of corn in a twelve-

hour day. The defendants contracted to pick 355 acres of corn with mechanical pickers for the Clintonville plant and 272 acres were picked. They contracted to pick mechanically 337 acres for the Shawano plant but only 27 and a fraction acres were picked. Some corn was ready to be picked as early as August 24th but the canning company was engaged in canning beans, and picking and canning of corn was not commenced until August 26th. The defendants admitted that they had sufficient plant capacity to can all of the corn contracted for and that their difficulty was lack of mechanical pickers.

As to the first contentions made by the defendants we cannot agree that the language appearing in section 3 of the agreement is clear and unambiguous. We find the provisions of said paragraph to be ambiguous and where a contract is ambiguous it must be construed most strongly against the party who prepared it, in this case the defendants. *Megal v. Kohlhardt,* 11 Wis. (2d) 70, 103 N. W. (2d) 892; *Ebenreiter v. Freeman,* 274 Wis. 290, 79 N. W. (2d) 649; *Nolop v. Spettel,* 267 Wis. 245, 64 N. W. (2d) 859; *Skelly Oil Co. v. Peterson,* 257 Wis. 300, 43 N. W. (2d) 449.

The defendants would have us believe that if the price of sweet corn dropped on the market they could refuse to harvest the corn and all the grower could claim is the use of the crop for the feeding of livestock. This gives no consideration to the question of fault or reasonableness. The plaintiff fulfilled his agreement and grew a crop of sweet corn suitable for canning purposes. The only reason advanced by the defendants for failing to harvest the crop is that they did not have enough mechanical pickers or hand labor to harvest his crop when the corn matured more rapidly than they had planned on. They attempt to add weight to their argument by claiming inability to procure other mechanical pickers or labor for hand picking. The record discloses that they made no real effort to secure either. There

was no attempt by the defendants, under paragraph 8(b) of the contract, to show that there was a failure of machinery or parts. The defendants had the burden of proof on their claim of inability to procure labor for hand picking. Their evidence thereon failed to convince the jury. A reading of it in the record has failed to convince us that the jury was wrong. In fact, it has the opposite effect.

In passing upon their contentions the trial court said:

"At the conclusion of the trial the court was impressed that there was only one issue for the jury to decide, whether defendants were excused from performing their part of the contract because of their inability to procure the necessary labor and equipment to perform the picking job. . . .

"The provision in the contract that plaintiff's benefits are limited to the use of the crop if it cannot be profitably harvested would become operative only in the event defendants were excusably unable to harvest it. It can have no application where the failure to harvest was due to defendants' default, as found by the jury. It seemed to the court at the time of trial, and now so seems, that the question whether the crop could be profitably harvested by defendants did not present a material issue in the case. Clearly, the crop became unprofitable, from the utilization standpoint, only because it was not timely harvested. There is no dispute that the crop adapted itself to profitable utilization if it had been picked and harvested on time. The crop was not timely picked nor harvested by the defendants, and plaintiff sustained a loss. The only legal and material issue is whether the defendants had a justifiable excuse under the contract for failing to do so. This was properly submitted to the jury and decided adversely to the defendants.

"The court can come to no other conscientious conclusion than that the verdict submitted the material issues in the case, and that the jury's answer finds support in the evidence and must be approved."

No error upon the trial is claimed except that the trial court did not properly interpret the contract. A review of the record convinces us that the contract was properly interpreted

at the time of the trial. The contention that there is no credible evidence to support the jury finding is without merit. The trial court approved the verdict and stated that it found support in the evidence. We have carefully reviewed the record and agree with the trial court.

*By the Court.*—Judgment affirmed.