Jon L. MALONE, Plaintiff-Appellant,

v.

NISSAN MOTOR CORPORATION IN U.S.A., a foreign
corporation, Defendant-Respondent.

Court of Appeals

*No. 94–1181. Submitted on briefs November 11,
1994.—Decided December 28, 1994.*

(Also reported in 526 N.W.2d 841.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William S. Pocan* and *Vincent P. Megna* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.   Jon L. Malone appeals from a judgment entered on March 22, 1994, granting summary judgment in favor of Nissan Motor Corporation. Because we conclude that there is no genuine issue as to any material fact regarding Malone's claims and Nissan is entitled to judgment as a matter of law, we affirm.

In April of 1991, Malone ordered a Nissan Sentra with a spoiler from Bockwinkel's West Allis Nissan, Inc. Malone was given the written warranty information when the Sentra was delivered. Prior to the

delivery, Malone signed several versions of a purchase agreement. Malone states that at the time he ordered the car and at the time the car was picked up, "[I]t was [his] understanding that the spoiler was a Nissan product." Malone asserts that he was "told by the salesman at Bockwinkel's that said spoiler was covered by a twelve-month, 12,000 mile warranty."

Since the car's delivery, Malone has had problems with the spoiler. Such problems include a crack in the light of the spoiler, a gap between the light and the spoiler, and the spoiler hanging off of the vehicle on one side. Malone has taken the car in for repairs at Bockwinkel's and another Nissan dealer. Malone states that he was never charged by any Nissan-authorized dealer for repairs.

Nissan's "1991 New Vehicle Limited Warranty" provided that "[a]ll parts and components of each new NISSAN vehicle supplied by NISSAN are covered . . .." Allen Twillie, a consumer affairs specialist prior to June of 1993, stated in an affidavit that "[t]he spoiler which is the subject of this litigation was not owned, manufactured, sold, distributed or supplied by Nissan."

On July 23, 1992, Malone filed a complaint against Nissan alleging: (1) violation of Wisconsin's lemon law, § 218.015, STATS.; (2) violation of § 402.608, STATS.; (3) that Malone is entitled to all remedies pursuant to § 402.719, STATS.; and (4) breach of contract.

On October 22, 1993, Nissan filed a motion for summary judgment. A hearing on the motion was held on December 20, 1993. Judgment was entered on March 22, 1994, dismissing Malone's claims against Nissan. Malone appeals from the trial court's grant of summary judgment in favor of Nissan.

In reviewing summary judgment determinations, we apply the same standards as the trial court. *Posyniak v. School Sisters of St. Francis*, 180 Wis. 2d 619, 627, 511 N.W.2d 300, 304 (Ct. App. 1993). A summary judgment motion shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS.

Malone argues that his claim falls under Wisconsin's lemon law. According to Malone, Nissan can be held liable for defects in the spoiler—a dealer-added accessory: "the Wisconsin legislature chose not to limit the applicability of the Wisconsin Lemon Law to non-conformities covered only by a <u>manufacturer's</u> express warranty." Section 218.015, STATS., provides in part:

> **(2)**(a)   If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.
>
> (b) 1.   If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2 or 3, whichever is appropriate.

If the nonconformity is not repaired, the manufacturer must accept the return of the vehicle and replace the vehicle or refund the consumer's money, depending on

441

the circumstances. *See* § 218.015(2)(b)2, 3. According to Malone's reasoning, a vehicle manufacturer would be liable under the lemon law for all warranties.

We cannot accept Malone's argument. We agree with Nissan that Wisconsin's lemon law "was not enacted to make automobile manufacturers 'super warrantors' of all automobile parts and products, particularly those which the automobile manufacturer does not manufacture, sell or supply." Malone's argument would make the manufacturer liable for all defects even if the manufacturer did not design, engineer, manufacture, distribute, sell or advertise the accessory or consider and write the warranty. This theory would relieve third-party accessory manufacturers from liability—they could manufacture and distribute poor quality products knowing that the car manufacturer would be liable if the accessory was defective.

Next, Malone argues that the Nissan warranty was broad enough to include the problems experienced by Malone. We disagree. Nissan's warranty only covered parts and components supplied by Nissan. There is no evidence that Nissan supplied the spoiler.

Malone also contends that Bockwinkel's acted as Nissan's agent. There is no evidence that Bockwinkel's was an agent of Nissan. Twillie stated in his affidavit that Nissan was not involved at any time in the process of hiring or firing any sales personnel at Bockwinkel's. Nissan did not supervise or control Bockwinkel's daily activities. According to Twillie, Bockwinkel's purchased automobiles from Nissan and then sold them for Bockwinkel's own account.

442

Further support that Malone does not have a claim against Nissan under a theory of agency is found in *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024 (7th Cir. 1993), where the court applied Wisconsin law to a situation involving a truck sale. In *Bushendorf*, the plaintiff purchased a truck manufactured by Freightliner Corporation. The plaintiff requested that the truck be equipped with an engine manufactured by Detroit Diesel, Inc. The plaintiff complained that the truck had insufficient power and sued Freightliner claiming that a salesperson for River States, the truck dealer, had told him that "a 425 is a 425." *Id.* at 1025. The plaintiff described the alleged promise as an express warranty by Freightliner of the power to be delivered to the wheels and made a claim under Wisconsin's lemon law. The court responded: "An agent can of course bind his principal with representations made within the scope of his employment, but an automobile dealer or other similar type of dealer, who like River States merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent." *Id.* at 1026.

Malone argues that Wisconsin's lemon law is remedial in nature and should therefore not be construed to restrict its protection to manufacturers' express warranties. The court in *Bushendorf* characterized the plaintiff's argument in a similar fashion: "Bushendorf responds that the Wisconsin lemon law is a 'remedial' statute which should be liberally construed—so liberally as to dispense with any requirement that the 'express warranty' to which the good 'does not conform' be made by the manufacturer of the 'lemon' or his agent." *Id.* We agree with the court that "[r]emedial statutes like other statutes are typi-

cally compromises, and a court would upset the compromise if it nudged such a statute closer to the victim side of the line than the words and history and other indications of the statute's meaning pointed." *Id.*

Malone contends that a person at the dealership orally warranted the spoiler for twelve months and twelve thousand miles which Malone understood to be the Nissan warranty. The parol evidence rule, § 402.202, STATS., provides:

> **Final written expression: parol or extrinsic evidence.** Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> (1) By course of dealing or usage of trade (s. 401.205) or by course of performance (s. 402.208);
>
> (2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

We conclude that the parol evidence rule is a bar to any evidence that an unidentified salesperson told Malone that the spoiler was covered by Nissan's warranty. The motor vehicle purchase contract voided all oral representations unless reduced to writing: "No oral representations are binding unless written on this form and all terms of the agreement are printed or written herein." As stated in *Bushendorf*, 13 F.3d at 1027, the salesperson's representation "was an oral warranty made in precontractual negotiation and not

repeated in the written contract—which contains an integration clause. So it was extinguished by operation of the parol-evidence rule."

Next, Malone argues that a genuine issue of fact exists regarding his claim for revocation of acceptance under § 402.608, STATS. Section 402.608 provides:

(1) The buyer may revoke the buyer's acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) Without discovery of such nonconformity if the buyer's acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

We conclude that the trial court properly dismissed Malone's § 402.608 claim. There is no evidence that any product warranted by Nissan has been nonconforming.

Malone also made a claim under § 402.719, STATS., alleging that the subject warranty was caused to fail of its essential purpose. We conclude that there is no evidence that Nissan's warranty has in any way failed.

Lastly, Malone asserts that Nissan breached its contract with him by not providing warranty work on the spoiler that was an essential, integral part of the contract entered into with Malone and Nissan's authorized dealer. We disagree. The warranty covered only the parts and components supplied by Nissan.

*By the Court.*—Judgment affirmed.