Kerry S. DIETER and Donna D. Hermes, Plaintiffs-Appellants,†

v.

CHRYSLER CORPORATION, a foreign corporation Defendant-Respondent.

Court of Appeals

No. 98–0958. Submitted on briefs May 11, 1999.—Decided July 21, 1999.

(Also reported in 600 N.W.2d 201.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas J. Flanagan* of *Jastroch & LaBarge, S.C.* of Waukesha and there was a supplemental brief by *Vincent P. Megna* and *Terrence M. Polich* of *Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Shawn M. Govern* of *Petrie & Stocking, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J.   Wisconsin's Lemon Law was meant to protect consumers from hidden flaws discovered following delivery of a new motor vehicle, not from visible defects apparent to the consumer prior to delivery. Here, Kerry S. Dieter and Donna D. Hermes complained of scratches on their new Dodge truck, which they noticed the day they went to pick it up. After the dealer promised to fix the scratches, they accepted the vehicle. Now, after the dealer's attempts to repair the scratches have failed, they look to the manufacturer for a refund of the purchase price. Because we do not think the Lemon Law was designed to protect buyers from

defects in motor vehicles that the buyers knew about prior to delivery, we affirm the trial court's grant of summary judgment to Chrysler.

The history of this dispute is as follows. Dieter and Hermes agreed to purchase a new 1996 Dodge Ram pick-up truck from Frascona Chrysler-Plymouth-Dodge Trucks on December 12, 1995. They requested the installation of some after-market accessories—a tonneau cover, a bug shield and rustproofing. Dieter and Hermes returned on December 16 to take delivery of the vehicle, now equipped with the accessories, and complete the purchase. At that time they noticed that the vehicle had been scratched during the installation of the accessories. They complained about the scratches and at first refused to accept the vehicle. Their salesperson told them that their deposit could not be returned, but that the dealership would repair the scratches. Four months later, the dealer attempted to make good on this promise by sending the truck to a body shop for the scratched areas to be repainted. When Dieter and Hermes went to pick up the truck at the body shop, they noticed swirl marks in the truck's finish. Although the body shop manager offered to repaint the vehicle, Dieter went back to Frascona and demanded that the truck be repurchased. Eight months later, Dieter and Hermes filed this action against Chrysler Corporation, alleging various warranty and contract breaches and a violation of § 218.015, Stats., Wisconsin's Lemon Law.

The case was decided at the summary judgment stage. Chrysler argued in its motion for summary judgment that the damage did not fall within the Lemon Law because the after-market accessories installed were not Chrysler products. Relying on *Malone v. Nissan Motor Corp.*, 190 Wis. 2d 436, 442, 526 N.W.2d 841,

843 (Ct. App. 1994), Chrysler asserted that these non-Chrysler products were not covered by Chrysler's warranty, and thus any damage resulting from their installation was not covered by the Lemon Law. Dieter and Hermes responded that summary judgment was inappropriate because there were still facts in dispute. They claimed that the defects were covered under the warranty and pointed to the fact that Chrysler paid for the repairs as evidence of this. Furthermore, according to Dieter and Hermes, the installed accessories were in fact Chrysler parts. The trial court ruled that the damage was not covered under the express warranty and granted summary judgment to Chrysler. Dieter and Hermes appealed.

On appeal, Chrysler admits that the accessories are Chrysler parts. It argues that regardless of whether Chrysler approved the parts or not, Chrysler is not liable for the dealer's negligent installation of after-market accessories. We think Chrysler is dead wrong. *Cf. id.* at 440–42, 526 N.W.2d at 842–43. But we decide the case on a different issue. The critical fact in this case is that Dieter and Hermes knew about the scratches when they accepted delivery of the vehicle. So, we asked the parties to submit supplemental briefs[1] addressing the following question: Is the Lemon Law applicable when the consumer is aware of vehicle paint defects before the actual delivery of the vehicle? We conclude that it is not.

---

[1] We note that we are not required to allow the parties an opportunity to address a point that was not originally raised by them. *See Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 297, 588 N.W.2d 19, 24 (1999) (Abrahamson, C.J., concurring). However, we are satisfied that the only fair way to conduct judicial business is to either order supplemental briefing or alert the parties to the issue prior to oral argument. *See id.*

Whether a statute applies to a particular fact situation is a question of law this court reviews de novo. *See Tomczak v. Bailey*, 218 Wis. 2d 245, 252, 578 N.W.2d 166, 170 (1998). Our primary goal in deciding if the statute applies is to further the intent of the legislature. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). Remedial statutes, like the Lemon Law, should be construed to best effectuate their purpose and "with a view towards the social problem which the legislature was addressing when enacting the law." *Id.* at 982, 542 N.W.2d at 151 (quoted source omitted).

The Lemon Law does not apply in this case because the consumers were aware of the defects before delivery of the vehicle but accepted the vehicle anyway. The coverage period under the Lemon Law is the life of the manufacturer's warranty or one year after first delivery of the vehicle to the consumer. *See* § 218.015(2)(a), STATS. Chrysler's warranty coverage, by the warranty's own terms, begins upon delivery of the vehicle. Therefore, the Lemon Law was triggered at the time the truck was delivered. But Dieter and Hermes had noticed the scratches prior to accepting delivery of the vehicle. This was before coverage of the Lemon Law began to run, as delivery had not taken place. That the scratches were present at delivery is not important. Many defects causing return under the Lemon Law probably are present at delivery. What is important is that Dieter and Hermes knew about the scratches. The Lemon Law covers defects the consumer becomes aware of subsequent to delivery. Here, the consumers were fully aware of the defect, yet accepted the truck anyway.

Our conclusion that the Lemon Law covers only those defects that manifest themselves to the consumer after delivery is in keeping with the purpose behind the Lemon Law. The Lemon Law was enacted to protect the consumer who makes a large investment in a brand new vehicle only to find that the vehicle is a dud. He or she drives the new vehicle home, expecting problem-free dependability. Problems develop, but it is too late for the consumer to back out of the deal. The Lemon Law protects this consumer from a seller who is unable or unwilling to repair the defective vehicle. *See Hughes*, 197 Wis. 2d at 979, 542 N.W.2d at 150.

Here, the alleged defects in Dieter and Hermes' truck were apparent when they accepted the vehicle. They had the chance to back out before the sale was final. Instead, they negotiated further with Frascona and ultimately accepted the vehicle subject to Frascona's promise to repair. They could have walked away and pursued a refund of their deposit.[2] But they chose to strike a bargain with Frascona. That they are now unhappy with the result of that bargain has nothing to do with Chrysler. That Frascona is a Chrysler dealer does not bring these visible, predelivery defects within the purview of the Lemon Law.

Dieter and Hermes argue that this holding rewrites the Lemon Law to include a "lack of notice" requirement. They point out that the Lemon Law contains no mention of the consumer's awareness, or lack thereof, of nonconformities. Our answer is that of course the Lemon Law makes no explicit mention of awareness. This is because the whole point of the Lemon Law is to protect consumers from hidden defects in their new vehicles. But when a consumer

---

[2] *See* § 402.711(1), STATS.; JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE 294–95 (2d ed. 1980).

knowingly accepts a vehicle that has been damaged at the dealership, that consumer cannot look to the manufacturer and the Lemon Law for relief.

According to Dieter and Hermes, our holding will create a "public policy nightmare" and negate the very purpose of the Lemon Law by forcing consumers to "either thoroughly inspect their new vehicles before taking delivery, or leave themselves open to an argument by the manufacturer that the consumer was aware of the problem but purchased the vehicle anyway." We do not place the burden on the consumer to "prove that [he or she] did not receive notice of the defect prior to delivery." We are not opening the door for manufacturers to devise elaborate disclaimer schemes "to provide 'notice' of every possible defect in the motor vehicle prior to delivery, thus rendering the manufacturer's warranty worthless." This would obliterate the protection of the Lemon Law. But here, there is no burden placed on Dieter and Hermes to prove anything. It is undisputed that they knew about the scratches when they accepted the vehicle. The visible scratches were what caused them to further negotiate with Frascona regarding repair of the vehicle. After reaching an agreement with Frascona, they chose to accept the vehicle, despite its defects. The Lemon Law will not bail them out of that decision.

██

Finally, Dieter and Hermes argue that Chrysler should not be allowed to "pass the buck" to its dealer. In support, they point to § 218.01(3)(a), STATS., which lists grounds for denial, suspension or revocation of a dealer's or manufacturer's license. Subdivision 35 was added to the statute in 1985, see 1985 Wis. Act 205, § 1b, and allows penalization for a manufacturer who "engages in any action which transfers to a motor vehi-

cle dealer any responsibility of the manufacturer . . .
under s. 218.015, [Stats.]." Dieter and Hermes are cor-
rect that the subdivision clearly demonstrates the
legislature's intent that each Lemon Law case does not
"end up as a swearing contest between the dealer and
the manufacturer, with each artfully disclaiming any
warranties." Here, Chrysler is not attempting to slough
off its responsibility under the Lemon Law. It never
had responsibility for the scratches. Coverage under its
warranty, and thus under the Lemon Law, did not
begin until Dieter and Hermes accepted delivery of the
vehicle. This they did with full knowledge of the
scratches. If they accepted the truck due to the dealer's
promise to repair the scratches, then their remedy is
with the dealer.

*By the Court.*—Judgment affirmed.