Kerry S. DIETER and Donna D. Hermes, Plaintiffs-Appellants-Petitioners,

v.

CHRYSLER CORPORATION, a foreign corporation, Defendant-Respondent.

Supreme Court

*No. 98–0958. Oral argument February 9, 2000.—Decided May 26, 2000.*

2000 WI 45

(Also reported in 610 N.W.2d 832.)

For the plaintiffs-appellants-petitioners there were briefs by *William S. Pocan, Vincent P. Megna, Terrence M. Polich* and *Jastroch & LaBarge, S.C.*, Waukesha, and oral argument by *Vincent P. Megna*.

For the defendant-respondent there was a brief by *Shawn M. Govern* and *Petrie & Stocking, S.C.*, Milwaukee, and oral argument by *Shawn M. Govern*.

Amicus Curiae brief by *Stephen E. Meili* and *Lawrence A. Towers*, Madison, for the Center for Public Representation, Inc.

¶ 1. DIANE S. SYKES, J. This is a "lemon law" case. The issue is whether consumers who are aware of defects in a motor vehicle at the time they accept delivery may nevertheless sue the vehicle manufacturer under the lemon law when repair efforts fail. Kerry Dieter and Donna Hermes purchased a Chrysler truck

and ordered some accessories installed before delivery. The dealer damaged the truck in the process of installing the accessories, but assured the buyers that the damage—scratches in the truck's finish—would be repaired. Dieter and Hermes accepted delivery, and when repair attempts were unsuccessful, sought relief from Chrysler under the lemon law.

¶ 2. The court of appeals held that because the lemon law was meant to protect consumers from *hidden* defects discovered *after* delivery of a new vehicle, Dieter and Hermes, who knew about the paint scratches before delivery of the truck, could not recover. The lemon law, however, contains no "hidden defect" limitation on its applicability. It also specifically provides that its protections cannot be waived. So we reverse.

¶ 3. The relevant facts are undisputed. On December 12, 1995, Kerry Dieter and Donna Hermes signed a contract to purchase a 1996 Dodge Ram pickup truck from Frascona Chrysler-Plymouth-Dodge, an authorized Chrysler dealership. The contract also provided for the purchase and installation of several aftermarket accessories for the truck, including a tonneau (truck box) cover, bug deflector, fender shield, and rustproofing. These accessories were all Chrysler-approved MOPAR[1] parts. Frascona was to install the accessories before Dieter and Hermes took delivery of the truck. At the time of sale, the truck's finish was not scratched.

¶ 4. During the installation of the accessories, the truck's paint finish was scratched in many places, apparently by Frascona's technician. On December 16, 1995, when Dieter and Hermes returned to pick up their truck, they discovered the scratches and

---

[1] MOPAR parts are parts approved by Chrysler for dealer installation.

announced their intention to cancel the sale. A Frascona representative informed them that if they cancelled the sale, they would forfeit their deposit.[2] The representative assured them that the damage to the truck's finish would be repaired. After weighing their options, Dieter and Hermes took delivery of the truck.

¶ 5.   In April of 1996, Frascona arranged for B&G Body Repair, Inc. to repaint the truck, at Chrysler's expense. Dieter and Hermes told B&G not to "buff" the finish after repainting, but B&G did so anyway. The buffing left "swirls" in the truck's finish and Dieter and Hermes were unhappy with the result. The record reflects that Frascona made at least three more attempts to fix the truck's finish (again at Chrysler's expense), the last in October 1996.

¶ 6.   Dissatisfied with the unsuccessful attempts to solve the problem, Dieter and Hermes sought relief under the lemon law. On November 19, 1996, their attorneys issued a demand letter to Chrysler stating that the truck qualified as a "lemon" under Wis. Stat. § 218.015 (1993–94)[3] and asked that Chrysler repurchase the vehicle as provided by the lemon law. Chrysler refused. On February 3, 1997, Dieter and Hermes sued Chrysler in Waukesha County Circuit Court, claiming: 1) violation of the lemon law, Wis. Stat. § 218.015; 2) violation of Wis. Stat. § 402.608; 3) relief under Wis. Stat. § 402.719; 4) breach of contract;

_____

[2] Pursuant to the terms of the contract to purchase and Wisconsin law, Wis. Stat. § 218.01(5m), cancellation of the sale would also have subjected Dieter and Hermes to a suit for damages by Frascona for up to five percent of the cash price of the truck.

[3] Unless otherwise noted, all references to the Wisconsin statutes are to the 1993–94 version.

and 5) violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301–2312).

¶ 7. The warranty on the truck provided coverage for "any item on [the] vehicle. . .that's defective in material, workmanship, or factory preparation." The warranty contained exclusions for damage to the truck due to accidents, abuse, negligence, misuse, repairs necessitated by improper maintenance, modification of the truck, or the installation of non-Chrysler parts. There was an exception to the exclusion, however, for "genuine MOPAR accessories approved by Chrysler for dealer installation."

¶ 8. Chrysler moved for summary judgment, claiming initially that the accessories installed by Frascona were not Chrysler MOPAR parts covered by the warranty, and therefore the lemon law was not applicable under *Malone v. Nissan Motor Corp.*, 190 Wis. 2d 436, 442, 526 N.W.2d 841 (Ct. App. 1994).[4] The circuit court, the Honorable Marianne E. Becker, initially granted summary judgment for Chrysler. Counsel for Dieter and Hermes objected that Chrysler had not proven that the accessories were not Chrysler MOPAR parts. The circuit court asked for affidavits on the issue and scheduled a second hearing.

---

• [4] In *Malone v. Nissan Motor Corp.*, 190 Wis. 2d 436, 439–40, 526 N.W.2d 841 (Ct. App. 1994), a car buyer purchased a new Nissan and at the same time ordered a spoiler installed on the vehicle. The spoiler was not manufactured by Nissan, and was not covered by Nissan's warranty. *Id.* at 440. The spoiler proved to be defective, and the car buyer sued Nissan under the lemon law. *Id.* The court of appeals held that the lemon law was not intended "to make automobile manufacturers 'super warrantors' of all automobile parts and products, particularly those which the automobile manufacturer does not manufacture, sell or supply." *Id.* at 442.

¶ 9. At the second hearing, the circuit court concluded that whether or not the parts in question were Chrysler MOPAR parts, the warranty and thus the lemon law were still inapplicable because the parts were not the problem, the installation was, and that was the responsibility of the dealer, not the manufacturer. The circuit court again granted summary judgment for Chrysler, and Dieter and Hermes appealed.[5]

¶ 10. On appeal, Chrysler conceded that the accessories were in fact MOPAR parts, but continued to argue that it was not responsible for damage caused by their negligent installation by the dealer. The court of appeals ordered supplemental briefs on the issue of the applicability of the lemon law when the consumer is aware of the defect at the time of delivery.

¶ 11. The court of appeals affirmed, but decided the case on different grounds than the circuit court. *Dieter v. Chrysler Corp.*, 229 Wis. 2d 481, 600 N.W.2d 201 (Ct. App. 1999). The court of appeals rejected Chrysler's argument under *Malone*, apparently because it was now established that the accessories were MOPAR parts covered by the warranty, and *Malone* was thus distinguishable. *Id.* at 484.

¶ 12. However, the court of appeals concluded that the purpose of the lemon law is to protect consumers from hidden defects in their new vehicles and therefore the lemon law is not applicable where the consumer is aware of nonconformities before delivery, but accepts the vehicle anyway. *Id.* at 484–86. Because Dieter and Hermes knew about the scratches when they took delivery of the truck, the court concluded that

---

[5] The circuit court dismissed the case in its entirety, including the UCC, contract and Magnuson-Moss claims, citing *Malone*.

the lemon law did not apply. *Id.* at 485. The court suggested that any remedy under these circumstances was with the dealer, not the manufacturer. *Id.* at 488.[6]

¶ 13.  We accepted review. Dieter and Hermes argue that the court of appeals has added a "hidden defect" or "lack of knowledge" element to the lemon law that is not contained in its language and not consistent with its purpose.

¶ 14.  This case was decided on summary judgment, which we review independently, guided by the same methodology as the circuit court. *Malone*, 190 Wis. 2d at 441. Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 15.  Our first task is to determine whether Chrysler's express warranty covers the scratches to the truck that resulted from the dealer's installation of the MOPAR parts, since the lemon law comes into play only where there is manufacturer warranty coverage. Wis. Stat. § 218.015(2)(a); *Malone*, 190 Wis. 2d at 442. We review the interpretation of a warranty or any other contract *de novo*, and in doing so, our primary purpose is to ascertain and give effect to the intent of the parties. *Gorton v. Hostak, Henzl & Bichler*, 217 Wis. 2d 493, 502, 577 N.W.2d 617 (1998). We look first for that intent in the plain language of the warranty. Where the terms are unambiguous, we must construe the warranty as it is written. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692 (Ct.

---

[6] The court of appeals did not specifically address the UCC, breach of contract or Magnuson-Moss claims, nor are we asked to on this review.

678

App. 1979), *affirmed*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). Contractual language is ambiguous only when it is "reasonably and fairly susceptible to more than one construction." *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979). If the language is ambiguous, we construe the ambiguities against the drafter. *Strong v. Shawano Canning Co.*, 13 Wis. 2d 604, 609, 109 N.W.2d 355 (1961).

¶ 16.   Chrysler's warranty provides:

> WHAT'S COVERED. . .The 'Basic Warranty' covers the cost of all parts and labor needed to repair any item on your truck. . .that's defective in material, workmanship, or factory preparation. You pay nothing for these repairs. The 'Basic Warranty' covers every Chrysler supplied part of your truck EXCEPT its tires and cellular telephone.

There is an exclusion for non-Chrysler parts and repairs occasioned by the installation of non-Chrysler parts:

> WHAT'S NOT COVERED. . .[Y]our Chrysler Warranties don't cover any part which is not a Chrysler supplied part. These warranties also don't cover the *costs of any repairs or adjustments that might be caused by or needed because of the use or installation of non-Chrysler parts,* equipment, materials or additives.

(Emphasis added.) But there is an exception to the exclusion:

> Examples of the types of alterations that are not covered include, but are not limited to the installation of accessories (*except for genuine MOPAR accessories approved by Chrysler for dealer installation*) such as sun roofs, window tinting, trailer

hitches, theft alarm systems, rustproofing or other protection products, or the use of any refrigerant other than that approved by Chrysler.

(Emphasis added.) So repairs to, or necessitated by, the installation of "genuine MOPAR accessories approved by Chrysler for dealer installation" are covered by the warranty, because they are excepted from the exclusion by the plain language of the warranty. The defect in this vehicle—scratches to its paint finish—resulted from the installation of MOPAR parts by a Chrysler dealer. So there is warranty coverage.

¶ 17.   Chrysler argues, however, that the damage occurred before the warranty start date (here, the date of delivery) and therefore there is no coverage. But the warranty contains no time limitation pertaining to the date the defect or damage was created. It simply covers repair costs that are incurred during the warranty period for qualifying defects and damage. Here, the damage in question meets the definition of "what's covered," read together with the exception to "what's not covered," and the repair costs were incurred during the warranty period. When this is the case, the customer "pay[s] nothing for these repairs," according to the plain language of the warranty.[7] In other words, there

---

[7] In addition to being contrary to the language of the warranty, Chrysler's argument regarding the warranty start date makes little sense. What good would a vehicle warranty be if it is read to exclude defects that originate prior to the warranty start date? Most, by definition, do. The main point of a manufacturer's warranty is to cover defects created during manufacture (which necessarily originates prior to the warranty start date). This particular warranty also allocates to the manufacturer responsibility for defects created by the dealer's installation of the manufacturer's parts. The warranty start date language

is warranty coverage. So the prerequisite to lemon law applicability—express warranty coverage—has been established, and we reach the statutory interpretation issue in the case.

¶ 18.   The court of appeals held that the lemon law does not apply when the consumer is aware of the defect in the vehicle before delivery. *Dieter*, 229 Wis. 2d at 485. The court grounded this conclusion in the remedial purposes of the lemon law:

> Our conclusion that the Lemon Law covers only those defects that manifest themselves to the consumer after delivery is in keeping with the purpose behind the Lemon Law. The Lemon Law was enacted to protect the consumer who makes a large investment in a brand new vehicle only to find that the vehicle is a dud. He or she drives the new vehicle home, expecting problem-free dependability. Problems develop, but it is too late for the consumer to back out of the deal. The Lemon Law protects this consumer from a seller who is unable or unwilling to repair the defective vehicle. *See Hughes*, 197 Wis. 2d at 979, 542 N.W.2d at 150.
>
> Here, the alleged defects in Dieter and Hermes' truck were apparent when they accepted the vehicle. They had the chance to back out before the sale was final. Instead, they negotiated further with Frascona and ultimately accepted the vehicle subject to Frascona's promise to repair. They could have walked away and pursued a refund of their

clearly would not be read to exclude warranty coverage if the defect in the vehicle had been created *by Chrysler* before the warranty start date; otherwise, the warranty would be almost completely illusory. That the particular defect in this case originated with the dealer and not Chrysler does not mean that the warranty start date language should be read any differently.

deposit. But they chose to strike a bargain with Frascona. That they are now unhappy with the result of that bargain has nothing to do with Chrysler. That Frascona is a Chrysler dealer does not bring these visible, predelivery defects within the purview of the Lemon Law.

*Dieter*, 229 Wis. 2d at 486 (footnote omitted).

¶ 19.  Whether a statute applies to a particular fact situation is a question of law that this court reviews *de novo*. *Tomczak v. Bailey*, 218 Wis. 2d 245, 252, 578 N.W.2d 166 (1998). Our first step in interpreting any statute is to determine the intent of the legislature by looking at the plain language of the statute itself. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). Remedial statutes like the lemon law are to be construed "with a view towards the social problem which the legislature was addressing when enacting the law." *Hughes v. Chrysler Motor Corp.*, 197 Wis. 2d 973, 982, 542 N.W.2d 148 (1996).

¶ 20.  The lemon law does not, on its face, speak to whether the vehicle defect must be "hidden" or the consumer unaware of its existence at the time of delivery in order to trigger relief. The relevant lemon law language states:

> If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

682

Wis. Stat. § 218.015(2)(a). The statute defines a "non-conformity" as:

> [A] condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle or to a component of the motor vehicle, but does not include a condition or defect which is the result of abuse, neglect or unauthorized modification or alteration of the motor vehicle by a consumer.

Wis. Stat. § 218.015(1)(f).

¶ 21.    Nothing in the plain language of the lemon law requires that the consumer be unaware of the nonconformity before accepting delivery of the vehicle in order for the law to apply. Nothing limits its applicability to vehicle nonconformities that are hidden. Had the legislature intended to restrict its application in this way, it could easily have done so. It did not. Where the language of the statute clearly and unambiguously sets forth the legislative intent, we do not look beyond it to ascertain its meaning. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999).

¶ 22.    Furthermore, the legislature explicitly provided that the protections of the lemon law cannot be waived. Wis. Stat. § 218.015(6) ("[a]ny waiver by a consumer of rights under this statute is void"). The court of appeals' conclusion that the law does not apply when the consumer is aware of the defect is essentially a rule of waiver by notice. This would contravene the nonwaiver provision of the lemon law.

¶ 23. The lemon law was enacted to provide consumers with remedies beyond the "inadequate, uncertain and expensive remedies of the Uniform Commercial Code or the Magnuson-Moss Warranty Act." *Hughes*, 197 Wis. 2d at 980 (citing Stephen J. Nicks, *Lemon Law II*, Wis. Bar Bulletin, Vol. 60, No. 7, July 1987, at 8). It is a warranty enforcement statute, "a self-enforcing consumer law that provides 'important rights to motor vehicle owners.'. . .The intent behind the law was to 'improve auto manufacturers' quality control. . .[and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure.' " *Id.* at 981–82. The law also was designed to provide an incentive to a manufacturer to restore a purchaser of a "lemon" to the position he was in at the time of the purchase. *Id.* at 976.

¶ 24. Chrysler contends that applying the lemon law to this situation does nothing to further these purposes and puts Dieter and Hermes in a better position than they were in at the time they took delivery of their truck. We disagree. The UCC and Magnuson-Moss Act remedies are no less inadequate, and the inconvenience and frustration just as great, when the consumer is aware of the defect and accepts the vehicle on the dealer's promise to arrange for warranty repair than when the consumer is wholly unaware of the defect. Furthermore, applying the lemon law here does not put Dieter and Hermes in a better position than when they bought or took delivery of their truck. When they signed the contract they thought they were getting a scratch-free truck; when they took delivery they thought they were getting a scratched truck that was warranted for repair and thus would be restored to its original condition. Applying the lemon law to these

684

circumstances does not enhance their position, it merely enforces the warranty.

¶ 25. Chrysler also argues, and the court of appeals held, that because Dieter and Hermes could have rejected delivery of the truck once they discovered the scratches, but instead chose to negotiate with the dealer regarding repair, their remedy is with the dealer, not the manufacturer. This ignores the fact that Chrysler assumed warranty responsibility for repairs necessitated by the installation of MOPAR parts by its dealers; along with this warranty responsibility comes potential lemon law liability.

¶ 26. Chrysler warned at oral argument that lemon law applicability in this situation would create a loophole for "street smart" consumers who would intentionally purchase damaged vehicles and then pursue relief under the lemon law. We perceive no such danger. The lemon law is a warranty enforcement statute. A consumer's first resort is to the warranty, which generally covers repairs. Only after repairs have failed within the meaning of the statute (four or more attempts or 30 days loss of use of the vehicle) do the replacement or repurchase remedies kick in. Wis. Stat. § 218.015(2)(b). And only after replacement or repurchase has been refused do the litigation remedies come into play. Wis. Stat. § 218.015(7). This is hardly fertile territory for fortune hunters. Furthermore, because lemon law applicability is dependent upon warranty coverage, manufacturers will only be liable for that which they agree to cover in their warranties.[8]

---

[8] The example cited by Chrysler's counsel at oral argument was a person who intentionally buys a hail-damaged car and then sues the manufacturer under the lemon law. We note that Chrysler's warranty expressly excludes damage resulting from environmental factors or acts of God, including hail damage.

¶ 27. We conclude that the plain language of Chrysler's warranty provides coverage for damage inflicted by its dealers during the installation of Chrysler-approved MOPAR parts. We also find, based upon its unambiguous language, that the lemon law contains no "hidden defect" or "lack of knowledge" requirement. Therefore, Dieter and Hermes' awareness of the scratches to their truck at the time they took delivery does not make the lemon law inapplicable.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.