**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 17, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1296**

Cir. Ct. No. **2022CV3159**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

DONNA RICE,

PLAINTIFF-APPELLANT,

V.

DANE COUNTY,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1 NASHOLD, J. Dane County's comprehensive community service program (the program) released Donna Rice's treatment records to an investigator with the Wisconsin Department of Health Services, Division of Quality Assurance, Office of Caregiver Quality, without Rice's informed consent after a

caregiver for the program was alleged to be having a sexual relationship with Rice. Rice sued Dane County (the County), alleging that in releasing the records without her informed consent, the program violated the confidentiality requirements of WIS. STAT. § 51.30 (2023-24).[1]  The County moved for summary judgment, which the circuit court granted based on its conclusion that the release was permissible under § 51.30(4)(b)5.  Rice appeals.  Because we conclude that the release of Rice's records was authorized under § 51.30(4)(b)1., we affirm.

## BACKGROUND

¶2    Comprehensive community service programs (CCS programs) are "county-wide … community-based psychosocial rehabilitation program[s] that [are] operated by … county department[s] … to provide or arrange for the provision of psychosocial rehabilitation services."  WIS. ADMIN. CODE § DHS 36.03(4).  CCS programs are certified and overseen by the Wisconsin Department of Health Services (the Department).  §§ DHS 36.04(1)(a), 36.06(1).  Pursuant to WIS. ADMIN. CODE § DHS 13.05(3)(a), CCS programs are required to report to the Department allegations of client abuse or neglect committed by any person employed by or under contract with the programs.[2]

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  WISCONSIN ADMIN. CODE ch. DHS 13 applies to facilities, organizations, and services that are licensed or certified by or registered with the Department to provide direct care or treatment services to clients.  WIS. ADMIN. CODE § DHS 13.02.  In full, WIS. ADMIN. CODE § DHS 13.05(3)(a) states:

(continued)

¶3 The relevant facts are undisputed. Rice received mental health treatment services from Focus Counseling through the program at a facility called "Off the Square Club." Focus Counseling contracted with the Dane County Department of Human Services to provide services to consumers such as Rice. *See* WIS. ADMIN. CODE § DHS 36.03(7) ("'Consumer' means an individual who has been determined to need psychosocial rehabilitation services."). Lutheran Social Services of Wisconsin and Upper Michigan, Inc. (Lutheran Social Services) was another provider with which the County contracted to provide program services, and Lutheran Social Services also provided program services at Off the Square Club. Focus Counseling, the program, and the Dane County Department of Human Services each created and maintained treatment records related to the services provided to Rice.

¶4 While Rice was receiving services through the program, the program administrator was informed of allegations that a certified peer specialist employed by Lutheran Social Services, Todd Winstrom, had a sexual relationship with Rice.[3] The program administrator submitted a Misconduct Incident Report regarding the

---

> *Entity's duty to report to the department.* Except as provided under pars. (b) and (c), an entity shall report to the department any allegation of an act, omission or course of conduct described in this chapter as client abuse or neglect or misappropriation of client property committed by any person employed by or under contract with the entity if the person is under the control of the entity. The entity shall submit its report on a form provided by the department within 7 calendar days from the date the entity knew or should have known about the misconduct. The report shall contain whatever information the department requires.

[3] A "Certified Peer Specialist" is "[a]n individual with experience in the mental health and substance use services system trained to provide support to adults struggling to find a path to recovery." WIS. DEP'T OF HEALTH SERVS., *Peer Services: Peer Specialists*, https://www.dhs.wisconsin.gov/peer-services/peer-specialists.htm (last visited July 14, 2025).

allegations, with attached documents, to the Department's Division of Quality Assurance, Office of Caregiver Quality. After the report was submitted, at the request of an investigator from the Office of Caregiver Quality, the program administrator submitted additional documents. The documents that the program administrator released to the Office of Caregiver Quality included Rice's treatment records, which were released without Rice's informed consent.

¶5 Rice sued the County, alleging, as pertinent here, that the County violated the confidentiality requirements of WIS. STAT. § 51.30.[4]

¶6 The County moved for summary judgment, arguing, as relevant here, that Rice's claims should be dismissed because the program was required to release Rice's records to the Office of Caregiver Quality in connection with the Office of Caregiver Quality's caregiver misconduct investigation. The circuit court granted the County's motion for summary judgment and dismissed Rice's claims because it concluded that the release of Rice's records without her informed consent was authorized pursuant to WIS. STAT. § 51.30(4)(b)5.

¶7 Rice appeals.[5]

---

[4] Focus Counseling was also named as a defendant in the complaint but was dismissed from the action based on the parties' stipulation.

[5] The County's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

**DISCUSSION**

¶8      Summary judgment is proper when the summary judgment materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "We review summary judgment decisions de novo, applying the same methodology as the [circuit] court." *Kiss v. General Motors Corp.*, 2001 WI App 122, ¶9, 246 Wis. 2d 364, 630 N.W.2d 742.

¶9      We interpret statutes "to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶44.

¶10     WISCONSIN STAT. § 51.30(4)(a) states that "all treatment records shall remain confidential and are privileged to the subject individual. Such records may be released only to the persons designated [by statute], or to other designated persons with the informed written consent of the subject individual as provided in this section." At the same time, § 51.30(4)(b) states that "treatment records of an individual may be released without informed written consent in [certain] circumstances," which the statute sets forth in § 51.30(4)(b)1.-28.

¶11     The County argues that the release of Rice's treatment records to the Office of Caregiver Quality was authorized under two of the circumstances set forth in WIS. STAT. § 51.30(4)(b): § 51.30(4)(b)1., which allows treatment records to be released without the subject individual's informed consent "[t]o an individual, organization or agency designated by the [D]epartment or as required

by law for the purposes of management audits, financial audits, or program monitoring and evaluation"; and § 51.30(4)(b)5., which allows the release of treatment records to specific individuals "as is necessary to determine progress and adequacy of treatment." Because we conclude that Rice's treatment records were lawfully released to the Office of Caregiver Quality pursuant to § 51.30(4)(b)1., we need not address whether their release was also authorized under § 51.30(4)(b)5. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive).[6]

¶12    Rice's treatment records were released so that the Office of Caregiver Quality could investigate allegations that Winstrom had a sexual relationship with Rice. As we now explain, this was authorized by WIS. STAT. § 51.30(4)(b)1. because Rice's records were released "as required by law for the purposes of … program monitoring and evaluation."

¶13    Relevant here, pursuant to WIS. ADMIN. CODE § DHS 36.06(2)(c), "Any authorized officer, employee or agent of the [D]epartment shall have access to all CCS documents, open and closed consumer records, staff members and consumers at any time to ensure compliance with the requirements of this chapter and other applicable federal and state statutes and regulations." We discern no reasonable interpretation of the language stating that the Department "shall have

---

[6] As stated, the circuit court granted summary judgment in favor of the County based on its conclusion that the release of Rice's treatment records was authorized by WIS. STAT. § 51.30(4)(b)5. We may affirm the circuit court on an alternative ground when, as here, the record is adequate and the parties have had the opportunity to brief the issue. *See **Glendenning's Limestone & Ready-Mix Co. v. Reimer***, 2006 WI App 161, ¶14, 295 Wis. 2d 556, 721 N.W.2d 704.

access to" CCS documents and consumer records that does not require the release of the documents and records to the Department or its agents. Accordingly, this code provision requires that CCS treatment records be released to the Department when their release is necessary to ensure compliance with applicable law.[7]

¶14    Similarly, we see no reasonable interpretation of the phrase "for the purposes … of program monitoring and evaluation" in WIS. STAT. § 51.30(4)(b)1. that does not encompass ensuring compliance with applicable law. Thus, read together, WIS. ADMIN. CODE § DHS 36.06(2)(c) and WIS. STAT. § 51.30(4)(b)1. authorize the release of treatment records because the release of documents for the purpose of "program monitoring and evaluation" squarely encompasses the release of treatment records to ensure compliance with applicable law.

¶15    Here, Rice's records were released for precisely this purpose—to ensure compliance with applicable law. Specifically, the allegations of Winstrom's sexual relationship with Rice implicated at least the following two regulations.

¶16    First, WIS. ADMIN. CODE ch. DHS 13 defines "[a]n act or acts of sexual intercourse or sexual contact under [WIS. STAT. § 940.225], by a caregiver and involving a client," as "abuse," *see* WIS. ADMIN. CODE § DHS 13.03(1)(a)2., and further defines "abuse … of a client" as "misconduct," *see* § DHS 13.03(13). The parties do not dispute that Winstrom was a "caregiver" as defined by § DHS 13.03(3), and as noted above, under WIS. ADMIN. CODE

---

[7] The County argues that Rice's treatment records are "closed consumer records" for purposes of WIS. ADMIN. CODE § DHS 36.06(2)(c), which Rice does not refute. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

7

§ DHS 13.05(3)(a), a CCS program is required to report to the Department allegations of client abuse committed by any person employed by or under contract with the program. § DHS 13.05(3)(a). The Department, after it receives a report of alleged misconduct from a CCS program, "shall review and, if necessary, conduct further investigation in regard to each [such] report." § DHS 13.05(6)(a); *see also* § DHS 13.05(6)(b)2., 3. (stating what the Department must do if it determines that an allegation lacks merit, and what it alternatively must do if it determines that further investigation of the report is necessary). Here, the release of Rice's records was authorized to ensure that the Department complied with its responsibility to investigate Winstrom's alleged misconduct.

¶17 Second, WIS. ADMIN. CODE § DHS 36.05(1)(b)2. states that a "major deficiency" consists of "a determination by the [D]epartment that an aspect of [a] CCS program or the conduct of its personnel" "[c]reates a risk of harm to a consumer or violates a consumer right created by this chapter or other state or federal statutes or rules." This may include when "[a] staff member has had sexual contact or intercourse, as defined in [WIS. STAT. § 940.225(5)(b) or (c)], with a consumer." § DHS 36.05(1)(b)2.a; *see also* § DHS 36.05(1)(a) (defining "deficiency" as "the failure to meet a requirement of this chapter"). A "major deficiency" constitutes grounds to deny an application to become a CCS program, § DHS 36.05(7)(a)3., and the Department "may revoke or suspend certification at any time," WIS. ADMIN. CODE § DHS 36.06(1). Reading these provisions together, Winstrom's alleged sexual relationship with Rice constituted an allegation of a "major deficiency" that, if proven, would have been a basis to revoke or suspend the program's certification, and the release of Rice's treatment records to the Department was authorized so that the Department could ensure that

the program was complying with the certification requirements of WIS. ADMIN. CODE ch. DHS 36.

¶18     In sum, we conclude that the release of Rice's treatment records was authorized under WIS. STAT. § 51.30(4)(b)1. because the records were released "as required by law for the purposes of … program monitoring and evaluation." We reject Rice's arguments to the contrary.

¶19     Rice argues that WIS. STAT. § 51.30(4)(b)1. does not authorize the release of her treatment records because this provision does not include the word "investigation." This argument demands too much specificity. Notwithstanding that § 51.30(4)(b)1. does not include the word "investigation," for the reasons explained above, the language that the statute does use plainly authorizes the release of treatment records under facts such as these.

¶20     Rice also argues that WIS. STAT. § 51.30(4)(b)1. "relates to '**program** monitoring,'" and "activities [that] occur at a programmatic level – **not** the level of an individual identified client." This argument fails because § 51.30(4)(b)1. specifically authorizes the release of "treatment records of an individual" for the purposes of program monitoring and evaluation. Moreover, as noted above, conduct such as that alleged here, although it might relate to an individual client, is nonetheless a "major deficiency" under WIS. ADMIN. CODE § DHS 36.05(1)(b), and a basis for the Department to deny certification to an entire CCS program. § DHS 36.05(7)(a)3.

¶21     Relatedly, Rice relies on the following language from WIS. STAT. § 51.30(4)(b)1.: "Information obtained under this paragraph shall remain confidential and shall not be used in any way that discloses the names or other identifying information about the individual whose records are being released."

9

However, this language refers to "[i]nformation *obtained* under this paragraph" (emphasis added), and this requirement thus applies to the recipient of the released treatment records. Here, this requirement applies to the Department, and it prohibits the Department from using information from Rice's treatment records in any way that discloses Rice's identifying information. It does not, contrary to what Rice suggests, apply to the program to prohibit the program from releasing to the Department Rice's name or identifying information.[8]

¶22    Because the undisputed facts establish that the release of Rice's treatment records was authorized under WIS. STAT. § 51.30(4)(b)1., the circuit court properly granted summary judgment in favor of the County and dismissed Rice's claims.

## CONCLUSION

¶23    For the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

---

[8] Rice also argues that the release of her treatment records was not required or authorized under WIS. ADMIN. CODE chs. DHS 13 and DHS 36. However, Rice recognizes that the "deciding question" is whether the release of her treatment records was authorized by WIS. STAT. § 51.30(4). Because we conclude that the release of Rice's treatment records was authorized by § 51.30(4)(b)1. and reject her arguments to the contrary, we need not address her remaining arguments regarding WIS. ADMIN. CODE chs. DHS 13 and DHS 36. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013).